AND THE

## CORRECTION OF ERRORS,

OF THE

## *STATE OF NEW-YORK;*

MARCH, 1808.

———

JAMES CHEETHAM, } *Plaintiff in Error,*

against

THOMAS TILLOTSON, } *Defendant in Error.*

IN ERROR.

ALBANY,
March, 1808.

Cheetham
v.
Tillotson.

THIS cause came before the court, on a writ of error, from the supreme court. The suit below was for a *libel,* in which the plaintiff in error suffered a judgment by default, on which damages were assessed by a jury, and to be amended, by the record in that court, which had been amended by that court, since the joinder in error here. All defects, or errors properly amendable, may be amended in this court, who will disregard all defects or errors in matters of form, which may be amended, or which are aided by the statute of *jeofails.* If the party wishes to have the transcript amended, the proper course is to allege diminution, and pray a *certiorari* to the court below; but after the defendant has pleaded *in nullo est erratum,* he cannot allege diminution, for by his plea he admits the record to be perfect ; so that after a joinder in error, neither party can allege diminution, or pray a *certiorari.*

*After an assignment of errors and joinder thereon, this court will not send the transcript of the record back to the supreme court,*

final judgment thereon entered in the supreme court, in *November* term, 1806. (See 2 *Johns. Rep.* 63.) Errors were assigned at the last session of this court, and there was a joinder in error.

The defendant in error, afterwards, moved in the court below, to amend the original record, and that court ordered the amendments to be made accordingly, on payment of costs. (See 3 *Johns. Rep.* 95. 99.)

*Henry*, for the defendant in error, now moved, that the transcript of the record in this court, be sent back to the *supreme court* to be amended, so as to conform to the original record, as amended in that court. He said, that according to the practice of the court of exchequer chamber in *England*, which this court followed, in cases not provided for by its own rules, this was the settled course of proceeding. He cited 2 *Strange*, 837. 2 Ld. *Raym.* 1570. As to the power of the court below to amend the record, in form as well as in substance, he cited *Yelv.* 164. *Cro. Jac.* 277. 429. 666. 628. 2 *Roll.* 471. *Chambers'* case. *Hardres*, 505. 2 *Lev.* 22. 1 *Salk.* 69. 270. 1 *Wils.* 337. 2 Ld. *Raym.* 1570. 5 *Burr.* 2730. *Doug.* 109. 3 *Term Rep.* 659. 749. 7 *Term Rep.* 474. 1 *H. Bl.* 238. 2 *Tidd*, 644. 1 *Bac. Abr.* (*Amend.*) 108.

*Foot* and *Baldwin*, contra. The supreme court can only amend the record in matters of form; and by the statute of *jeofails*, this court are not to regard mistakes in matters of form, when alleged for error. All or most of the cases cited, merely show that this court may bring up the amended record, by *certiorari*, when the propriety of the amendment may be judged of here, which is the regular and correct course of proceeding. If the amendments are merely *formal*, as has been said, there the

party will have the benefit of the statute, and there is no necessity of putting him to the delay and expense of sending the transcript to be amended in the court below. Again, there was a joinder in error, and the cause was set down for hearing, at the last term; and the party now comes too late to apply for leave to amend.

In the case of *Tully* v. *Sparkes*, (2 Ld. *Raym.* 1570.) the amendment was made by virtue of the statute of 16 and 17 *Car.* II. c. 8. If the transcript is sent down to be amended in matters of form, how is this court to know, when it is returned, that it has not been amended in matters of substance?

*Henry*, in reply. The mode of sending down the transcript to be amended, has been substituted instead of the practice of alleging diminution, and awarding a *certiorari;* and it is the most correct and convenient course of proceeding. The transcript, when returned, will always show what amendments have been made. The supreme court have a sound discretion in regard to amendments. The cases cited show that they may amend both in form and substance. If they abuse this discretion, the judges may be impeached; but there is no power to prevent their exercising such discretion. The direction of the statute 17 and 18 *Car.* II. was merely in confirmation of a convenient rule of practice. It is cheaper, and more expeditious to send down the transcript to be corrected, than to allege diminution, and award a *certiorari.*

THE CHANCELLOR. A motion has been made to send back the transcript of the record, returned on the writ of error in this court, to the supreme court, to be amended, on a suggestion on the part of the defendant, that

several of the matters assigned for error, have been amended in the record remaining in the supreme court.

To this it is objected: 1. That as the errors are formal, this court will disregard them; and that, therefore, it is not necessary to delay the parties, by sending down the transcript.

2. That the defendant is too late after joinder in error. As to the first point, the suggestion is, that the record in the court below has already been amended. If so, this court, if it now proceeded, would give judgment on a record variant from the transcript; and to preserve a consistency in the proceedings, it is proper, that before a judgment of affirmation or reversal is pronounced, the transcript should be made to correspond with the record of which it imports to be a copy.

The case of Rutter v. Redstone, (2 Stra. 887.) cited in argument, shows, that after error in the exchequer chamber, (the proceedings in which are professedly the model of the proceedings here, as they are expressly referred to and recognised in the rules of this court as to practice,) the transcript was brought back and amended by the original record.

The case of Tully v. Sparkes, (2 Ld. Raym. 1570.) was in the exchequer chamber, on a judgment from the king's bench. The court were strongly of opinion, that the judgment was erroneous; and after having been twice argued in the exchequer chamber, the record was amended in the king's bench, and the transcript returned to conform it to the original.

In this court, during the session of 1798, in the case of Cross v. Wardell, the transcript was amended here; and an order made to direct the amendment of the record by the transcript; and after the order was entered, the judgment was affirmed. I recollect there was some diversity of opinion on the subject, but it passed without much examination.

The practice in the court of king's bench on writs of error, had probably some influence in the determination of the last case. But there, in error from the common pleas, or from inferior courts, the record itself is brought up, and not a transcript.

The question is not here, whether an amendment is proper, for that has been already decided in the court below; but what mode is to be adopted to conform the transcript to the record? The cases from *Strange* and Lord *Raymond*, appear to me to conclude forcibly to both the points which have been stated, and to show, beyond a doubt, that the regular mode is to return the transcript, in order to conform it to the original; and that the defendant in error is not too late in his application. The other errors assigned, as to the words not being actionable, will still be available, when the record is returned, if they are now so, should the plaintiff be inclined to prosecute his writ; and if he is content to waive it, the court below have made it the condition of the amendment, that the defendant here should pay all the costs.

CLINTON, senator. This is a motion made by the defendant in error, who was plaintiff in the court below, to transmit the transcript of the record there, for the purpose of being amended, agreeably to the record there, as amended by an order of the supreme court, after a joinder in error, in this court.

Although the decision of this question cannot affect our determination on the merits; yet it is of importance that a proper rule should be established, in regard to the correspondence and communication between this court, and inferior tribunals.

The origin and progress of amendments at common law, and under the statutes of *jeofails*, exhibit a curious portion of legal history. At one period, parties were so much harassed by writs of error, brought for

*IN ERROR.*
........
ALBANY,
March, 1808.
Cheetham
v.
Tillotson.

mistakes in orthography, or the slightest clerical mis‑ prisions, that the chances for justice were forlorn. Re‑ dress, in a very limited form, was, indeed, granted at common law. This, at first, was not extended beyond the term in which the judicial act was done ; for during the term, the record was supposed to be in the recol‑ lection of the court, but, afterwards, no alteration was admitted. At a subsequent period, the rule was more liberally extended ; and all the proceedings were con‑ sidered as only *in fieri*, and subject to the control of the court, at any time before judgment was rendered and enrolled. Such, however, was the general conduct of the courts of common law in *England*, that justice was entangled in a net of technical form, and the parliament was compelled, by twelve different statutes, denominated the statutes of amendments and *jeofails*, to interfere, and remedy the enormous evil. The amendments, authori‑ sed by these statutes, are seldom, if ever, actually made ; but their benefit is attained by the courts overlooking the exception. This is an important idea to bear in mind in the decision of this question ; for the present applica‑ tion is founded on amendments, made under the statute, and our statute is a transcript of the different acts, pass‑ ed on this subject, by the *British* parliament. The first enacting section of our statute, which declares, " that no record, or process, shall be annulled or discon‑ tinued, by mistaking, in writing, one syllable, or one let‑ ter too much or too little," shows the little reliance to be reposed in courts, who would thus overlook the right of the case, and sacrifice the interests of justice to the trifling errors of pleaders and clerks.

The case of *Tully* v. *The Executors of Donaldson*, re‑ ported in Lord *Raymond*, (p. 1570.) which is relied on as authoritatively binding, and pointedly bearing on the question before us, will, if analyzed, and fully examined, sufficiently prove, that the decision of the court is en‑

titled to no weight in this place. In the entry of the judgment, the words *ex assensu*, were omitted by the misprision of the clerk; a trifling error, and expressly cured by one of the statutes of *jeofails*. Error was brought, and after grave discussion, the justices and barons seemed strongly of opinion, that by reason of this omission, in the entry of the judgment, it was erroneous. A motion was thereupon made to amend, which the court overruled; application for that purpose, was then made to the court of king's bench, which was granted, after solemn argument; and at a subsequent term, on motion made in the king's bench, the transcript of the record in the exchequer chamber was amended by the record of the king's bench; and the judgment was afterwards affirmed in the exchequer chamber by three of the justices of the common pleas, and three barons of the exchequer; one of the judges being absent, one doubting, and another having voted in the court below. Allowing every weight to this case, it does not appear how the record was remitted from the exchequer chamber to the king's bench; whether the court granted it on motion, or in what shape, or under what solemnity it went. But it may be justly objected to this decision, that it ought to have little weight in regulating the practice of this court. The whole procedure, was a series of solemn trifling, a pertinacious adherence to precedent, and an idolatrous veneration for the *formulas* of pleading, without any regard to justice. An act of parliament, had, among other evils, provided, in terms, against the error alleged in this case; and yet the court turned the party back to the king's bench, and suspended his rights, when justice might have been administered in the first instance, in perfect conformity to law, and without this serpentine and perplexed course.

Independently, however, of the intrinsic demerits of the proceeding, an objection lies to the court, which furnishes

the precedent. It is not a court of *dernier resort*, nor of general and extensive jurisdiction. Formerly no writ of error lay on a judgment of the king's bench, except in parliament; by which means the subject was often disappointed of his writ of error, either by the not sitting of parliament, or by their being engaged in public business, when they did sit.

By a statute of the 27th *Elizabeth*, the court of exchequer chamber, was constituted a court of errors, and consists of the justices of the common pleas, and the barons of the exchequer; but its decisions are not conclusive, as they may be reviewed in the house of lords, on a writ of error. Besides several classes of cases, which are not within its jurisdiction, it cannot, under the statute constituting it, notice errors alleged concerning the jurisdiction of the king's bench, or for want of form, in any writ, return, plaint, bill, declaration, or other pleading, process, verdict, or proceeding whatever. If the case of *Tully* v. *The Executors of Donaldson*, was a mere question of form, as I think it was, the exchequer chamber had no right to sustain it. But laying aside all these considerations, ought this court of *dernier resort*, to follow implicitly a precedent, furnished by a tribunal of limited and subordinate jurisdiction, proceeding upon untenable grounds, and hesitating between the claims of justice, and the observance of forms.

A writ of error, (2 *Tidd*, 1056.) lies for some error or defect in substance, that is not aided, amended, or cured, at common law, or by the statute of amendments and *jeofails*. When error, therefore, is brought, in a case like the present, which is not aided at common law, several questions present themselves:

1st. Whether the statute of amendment and *jeofails*, interposes, and cures the error?

2d. If so, by what tribunal shall the benefits of that statute be administered; by the court alleged to have

IN ERROR.
........
ALBANY,
March, 1808.

Cheetham
v.
Tillotson.

committed the error, or by the court to which error is brought, or both ?

And 3dly, in what way shall the remedy be administered ?

Our statute of amendments and *jeofails* declares, " that if issue hath been, or hereafter shall be tried, by the oath of twelve men or more, for the party plaintiff or demandant, or for the party tenant or defendant, plaintiff in assise, vouchee, prayee in aiel, or tenant by receipt, in any manner of action, suit, bill, plaint or demand, in any court of record, then the judges or justices, by whom judgment thereof ought to be given, shall proceed and give judgment in the same, any mispleading, lack of colour, insufficient pleading, or *jeofail,* any miscontinuance, or discontinuance, or misconceiving of process, misjoining of the issue, lack of warrant of attorney of the party against whom the issue shall happen to be tried, or any other default or negligence, of any of the parties, or of their counsellors or attorneys, had or made, to the contrary notwithstanding ; and the judgments thereof to be had and given, shall stand in full strength and force, to all intents and purposes, according to the said verdict, without any reversal or undoing of the same, by writ or otherwise, in like form as though no such default or negligence had ever been had or committed." It further proceeds and declares, " that certain other defects, (particularly specifying them,) and all such omissions, variances, defects, and all other matters, of like nature, not being against the right of the matter of the suit, nor whereby the issue or trial is altered, shall be amended by the justices or other judges of the courts, where such judgments are or shall be given, or whereunto the record is, or shall be removed by writ of error." By a subsequent section, judgments upon confession, *nihil dicit* or *non sum informatus,* are put upon the same footing, as judgments grounded on

*IN ERROR.*
••••••
ALBANY,
March, 1808.
〜〜〜〜
Cheetham
v.
Tillotson.
————

verdicts. It appears, therefore, that all defects or errors, properly amendable, may be amended in this court, or in other words, passed over, without being actually amended. To permit an inferior tribunal to amend a record after it is before us, would be authorising them to assume the powers of this court; to determine what is error and what is not; and thus to arrest the cause from the proper *forum,* and indirectly deprive it of its jurisdiction. Besides, there can be no use in the exercise of the right. If the matter assigned for error, is properly amendable, this court may do it; if not, it ought not to permit other tribunals to interfere. The statute of *jeofails,* passed in the reign of *Charles* II. to which I have referred, was intended to cure several errors, which were before deemed matters of substance; and it was, from its salutary and extensive operation, emphatically denominated the omnipotent act. Our statute on this subject, not only comprehends that of *Charles,* but all those passed before, and subsequently, and may be considered as embracing, as it professes to do, " every default and negligence of the parties, or of their counsellors or attorneys."

If, however, amendments are allowed in inferior tribunals, in any case, after the cause is before us, it appears to me, that the safe, the proper, and the usual course to pursue, is not by sending back the transcript of the record; but by suffering the party to allege diminution, and to bring up the proceedings below, by *certiorari.* This court will then have the whole subject before them, and will be enabled to determine, whether the court below has exceeded its powers, and gone beyond the limits of sound discretion. In the case of *Danvers* v. *Pender,* (1 *Wils.* 337.) it was moved for leave to amend the transcript of the record in error, from an inferior court, where there was a mistake, by the record below, upon payment of costs, " *because diminution cannot be alleged in a record in error, from a*

*IN ERROR.*
........
ALBANY,
March, 1808.
Cheetham
v.
Tillotson.

*base court,"* which motion was granted; clearly conveying the idea, that if it was not a base court, then the alleging of diminution was the proper course. According to an adjudged case, on a writ of error to the house of lords from the exchequer, that diminution cannot be alleged, (2 *Tidd,* 1103.) in the body of a record, contrary to the transcript; doubts may indeed arise, whether the allegation of diminution in this case, is not incompatible with the transcript, and whether it ought to be admitted. But, at all events, the party, after pleading *in nullo est erratum,* admits the record to be perfect; the effect of his plea being, that the record, in its present state, is without error, and, therefore, after a joinder in error, neither party can allege diminution, or pray a *certiorari.*

It is true, that notwithstanding the parties are concluded, after this stage of the controversy, yet this court, in the plenitude of its power, may at any time, *ex officio,* award a *certiorari* to supply a defect in the body of the record, as well as in its branches. I think, however, that I have shown, that this is a case which does not demand an extraordinary interposition.

We are called upon to establish a rule of practice, of considerable importance. In doing this, we must guard our own rights; we must not permit an inferior tribunal to oust us, in an indirect way, of our jurisdiction; but the powers deposited with us, as a court of superintending jurisdiction, and of *dernier resort,* must be sedulously maintained, in order to fulfil the great objects for which a tribunal, invested with such a high trust, and such extensive powers, was erected.

I am, therefore, of opinion, that the transcript of the record ought not to be sent back to the supreme court. The majority of the court concurred in this opinion.

Motion denied.