## Cornelius O'Flynn and another v. James E. Eagle and another.

Where, after error assigned in this court, the defendant in error, without the leave of this court, obtains an amendment to the record in the court below, with a view to obviate the error assigned, this court will neither amend the transcript to make it correspond with the amended record, nor award a certiorari to bring up the amendment.

The case of *O'Flynn v. Holmes,* 7 *Mich.* 454, approved.

Under the circumstances of this case, the defendant in error allowed to make a new application to the court below to amend, with leave to plaintiff in error to discontinue at the costs of defendant in error.

*Heard April 24th. Decided May 12th.*

Error to Wayne Circuit, where judgment was rendered in favor of defendants in error, against O'Flynn, as endorser, and Daniel Finn, the other plaintiff in error, as maker of a promissory note. The error assigned was, that there was no service of process upon Finn. After error assigned, the court below, on motion of defendants in error, amended the record so as to show judgment against O'Flynn only.

*J. S. Newberry,* for defendants in error, now moved that the record in this court be amended to correspond with the record below, on presenting a certified copy of the amendment made below since error brought; or, instead thereof, that this court award a certiorari to bring

up the record as amended. He contended that the amended record was now the only record in the case:— 25 *Conn.* 496 ; 25 *Ala.* 644 : that the amendment may be brought up by certiorari:— 2 *Scam.* 539 ; 2 *Bibb,* 88 ; *Ibid.* 7 ; 8 *Cow.* 746 ; 4 *Cow.* 91 ; 25 *Ala.* 644 : or this court may amend the transcript to make it correspond with the amended record:— 2 *Cow.* 408 ; 2 *Ld. Raym.* 1570 ; 2 *Strange,* 869 ; 3 *Johns.* 95 ; *Ibid.* 526 ; *Coleman's Cas.* 41 ; 7 *Wend.* 229 ; 1 *Cow.* 65 ; 4 *M. & S.* 94 ; 15 *Johns.* 318 ; 3 *Ind.* 107 ; 2 *Stew.* 492 ; 9 *Port.* 193 ; *Ibid.* 252 ; *Burr.* 2449, 2730 ; 2 *Johns.* 184 ; 1 *Gall.* 257.

*C. O'Flynn,* contra, relied upon *O'Flynn v. Holmes,* 7 *Mich.* 454. He insisted, also, that defendants were too late in their application, the assignment of errors having been filed nearly a year ago.

CAMPBELL J.:

The rule adopted in *O'Flynn v. Holmes,* 7 *Mich.* 454, was, we think, correct, and we are disposed to adhere to it. It is true, the amendment made in the court below, in that case, was not made from the record, but from matter *aliunde,* while here it is based entirely upon the files and records; but we think there is no difference in principle, so far as our action is concerned. If we recognize the amendments as binding at all on us, when made without a *remittitur,* we can not distinguish in favor of either kind; because when we once sanction them on our own records, we can not review the decision of the court below upon the propriety of granting them:—*Mellish v. Richardson,* 9 *Bing.* 125 ; *Matheson's Admrs. v. Grant's Admrs.* 2 *How.* 263.

There are some amendments which will be supplied in any court, in order to make the record read consistently; and where it is unnecessary to make any amendment in form at all. Such was the case of *Emery v. Whitwell,* 6

*Mich.* 474. In all other cases, the amendment must be made in the court below. And we have already intimated, on several occasions, that no obstacle should be thrown in the way of permitting such amendments, within a reasonable time, wherever it is made to appear that they are proper, and likely to be made: — *Farrand v. Bentley*, 6 *Mich.* 281; *Sweetzer v. Nye*, 5 *Mich.* 33; *Scribner v. Gay*, 5 *Mich.* 511.

But there are, we think, very strong reasons against permitting cases to be disposed of without our previous assent, by the courts from 'which they are removed. A party who considers himself aggrieved, has a right resort to this court, by writ of error or other proper proceeding; and this court becomes possessed of the case as it stood when removed. To permit amendments after such removal, and without our sanction, to be made at the discretion of the court below, would be, in effect, to surrender to them our appellate jurisdiction, and to enable them to oust us of it at their pleasure. It is very likely that abuses would but rarely happen; but if they should happen, we should be powerless. And while we are disposed, in all reasonable cases, to give all proper facilities for amendments, we can see no propriety in recognizing the principle that an appellate court can have its hands tied by the court from which an appeal is taken.

There are several reported cases in which it is asserted, by very able judges, we admit, that an appellate court should recognize the amendments made, after error brought, in the court below. So far as our observation has gone, these assertions are found generally, if not universally, in the decisions of the courts making the amendments. We have met with but two cases in which the question arose in the appellate court, in any direct form, concerning the binding force of such amendments. In *Richardson v. Mellish*, 3 *Bing.* 334, 336, the Common Pleas amended a record while the case was pending in error in the King's

Bench. In 7 *B. & C.* 819, is a report of an application in the King's Bench, to allow the amendment to be added to the transcript in that court. The court divided in opinion as to whether it should be permitted at all; and without deciding the question, allowed it to be done with an explanation of the facts, in order that the House of Lords might determine whether it was proper. In the House of Lords, it was held, on the opinion of the Judges (9 *Bing.* 125), that inasmuch as the King's Bench had permitted the amendment to get upon their record, it was incompetent to inquire how it got there; and so they declined to decide whether the amendment of the King's Bench record should have been allowed. The other case is that of *Cheetham v. Tillotson*, 4 *Johns.* 499. In that case the Supreme Court had, after error brought, allowed a substantial amendment, and a motion was made to have it brought into the Court of Errors, by allowing the transcript to be remitted for that purpose. The court re-fused to permit it. We can not learn that the rule has been changed in New York, and it seems to us entirely reasonable.

If it were proper to make distinctions, the present case would, perhaps, warrant a relaxation of the rule. But we think the principle should be adhered to. Both motions are denied. But under the circumstances, the defend-ants may have an order permitting a new application to the Circuit Court, with leave to the plaintiff in error to discontinue. He is entitled to his costs if he does so, under all the decisions; and this seems to have been con-ceded by counsel. He is also entitled to the costs of one motion.

MARTIN CH. J., and MANNING J., concurred.

CHRISTIANCY J.:

I am not able to agree with my brethren, in the de-cision of this motion. The case of *O'Flynn v. Holmes,*

O'FLYNN v. EAGLE.

7 *Mich.* 454, upon which my brethren base their decision in this case, was but little discussed, and no cases cited. I assented to the decision in that case with reluctance, and without being satisfied of its correctness.    But as it was a question of practice, I did not at the time think it of sufficient importance to justify a dissenting opinion.

Subsequent reflection, however, and the discussion of the present case, have satisfied me, that the course of practice there adopted seriously affects the rights of parties, and is calculated to check the powers of amendment given by the statute, which, I think, should be liberally exercised in cases like the present, where the amendment is justified by the facts, and is in affirmance of the judgment.

Without going fully into the effect of this ruling in other cases, I will merely say here, that when the only error complained of in the record is such as that court, upon any showing of facts, was competent to amend, and the certificate of that court is presented, showing that the amendment has already been made since the transcript was sent up, I can never consent to reverse the judgment for such error, unless it be shown that the amendment has been improperly allowed.    And if we can not act directly upon such certificate as authentic evidence (which I think we may; See 2 *Cow.* 408; 2 *Ld. Raymond,* 1570; 2 *Strange,* 869; 7 *Wend.* 229; 3 *Ind.* 107), the fact that the amendment has already been made in the court below, ought to be sufficient ground for an order sending down the record to be amended, or for a certiorari to send up the record as amended; and it is of little consequence which of these methods is adopted, as both are equally safe and convenient. And I confess my entire inability to see why the defendant in error should be required to show any further cause for the amendment, to entitle him to such order or certiorari.

The fact that an amendment has been made, which that court had a right, upon a proper showing, to make, must, it seems to me, be quite sufficient ground for the amend-

ment, until something is shown to the contrary. The opposite view, it seems to me, presumes in advance, and without proof, that the amendment has been improperly granted; and assumes that the court below is not capable of judging correctly upon the question of its propriety, without our previous advice and instruction; though all the facts upon which the question depends occurred in that court, and not before us.

If the entire jurisdiction of that court over its own record ended with the return of the transcript to this court, under the writ of error, there might be good ground for such a position. But such is not the fact with the record proper, whatever it may be with a bill of exceptions, the original of which, under the statute, is required to be returned to this court. Execution may be issued on the judgment in the court below, notwithstanding the writ of error, unless bond be given; and the issuing of execution may often involve the necessity of amending the record. Both in England and in this country, in cases where a transcript only is sent up on error, the record, for all purposes of amendment, is always regarded as still remaining in the court below. See the authorities cited by counsel for defendants in error: — 2 *Sellon's Pr.* 410; *Graham's Pr.* 667, 668; 2 *Arch. Pr.* 262; *Tidd's Pr.* 652.

The rule adopted by my brethren will not recognize the amendment made in this case, though the record should now be remitted and the same amendment returned to us on certiorari, because not made by our previous authority; and the amendment must be again made in that court to entitle it to our recognition. Why require of the court below the idle ceremony of such a repetition?

Will the order of this court place that court under any greater obligation than the law imposes? Is it quite respectful to that court to indulge such a supposition, or to require it to repeat the amendment?

In reference to the showing of cause in this court, for

an amendment to be made in the court below, this will, of course, be confined to such amendments as can only be made on cause shown in that court, since all amendments which may be made without showing cause there, can be made here, or the record treated as amended without any amendment in fact.    Hence, this rule imposes upon the defendant in error the expense, labor and delay, of first showing cause in this court, and then in the court below.

If the amendment has not yet been made by that court, whatever may be the showing here, it is by no means certain that when the parties come to be heard, as they must be, in that court, that the amendment will ever be made; and the cause has been delayed, and the expense of the proceedings incurred, to no purpose.    All this is avoided by acting upon the amendment already made.    And if amendments of this kind, made in the court below, are to be looked upon with suspicion, the better corrective, I think, would be to adopt the rule that we will not in the future recognize or receive as a part of the record an amendment made without a previous application to this court, unless accompanied with the reasons or grounds upon which the amendment was made, nor unless those grounds shall appear to us sufficient.

As to the stage of the case in which an amendment is to be made, and the question of diligence, whenever this court have, in any way, reasonable ground to believe that the only error complained of in the record has not occurred in fact, and that an amendment might be made in the court below, according to the facts, so as to remove the error, it is, I think, the duty of this court, in in any stage of the cause, to take the proper means to have the record amended.    Delay in the application may be good ground for imposing terms, but can not justify the reversal of a judgment for errors which, we have good reason to believe, have no real existence.