BROOKS AND ANOTHER, *Overseers of the Poor of the Town of* TIOGA, *against* READ AND ANOTHER, *Overseers of the Poor of the Town of* SENECA.

A. B., a pauper, was removed by an order of two justices, from the town of T. to the town of S. IN ERROR, to the court of common pleas of the county of *Tioga*.

On appeal, the order was quashed, and the overseers of T. directed to pay a sum of money to the overseers of S. on account of the expenses of the pauper, intermediate between the time of the removal and quashing the order. At the time the order was quashed, the pauper could not, by reason of ill health, be reconveyed to T., but was supported for some time thereafter, at the expense of the overseers of S. Held, that the overseers of S. could not maintain an action of assumpsit against the overseers of T. to recover the amount of those subsequent expenses, there being no previous request, or *express* promise to pay them; and admitting that a moral obligation would be a good consideration for an *implied* promise, here was no moral obligation on the part of the overseers of T., as it did not appear that the pauper was legally settled in T.; for the order of sessions quashing the original order of removal, does not prove that the pauper was settled in T., but only that he was not settled in S.

Whether the provision of the act for the relief and settlement of the poor, (sess. 36. c. 78. s. 15.) giving a summary remedy to the overseers of the poor of one town, who have supported a pauper of another town, who, by reason of sickness, could not be removed, against the overseers of that other town, is cumulative, or takes away the common law remedy? *Quære.*

Whether, if A. B. had had no legal settlement in this state, the overseers of S. could have maintained an action against the overseers of T. for the expenses incurred subsequently to quashing the order of removal? *Quære.*

Whether a moral obligation will support an action on an implied assumpsit? *Quære.*

ALBANY,
August, 1816.

OVERSEERS OF
TIOGA
v.
OVERSEERS OF
SENECA.

The defendants in error, who were the plaintiffs in the court below, brought an action of *indebitatus assumpsit*, in the court below, for meat, drink, board, washing, lodging, medicines, medical assistance, attendance, and other necessaries, provided at the special instance and request of the defendants, as overseers of the poor of the town of *Tioga*, for one *Robert M'Phee*, and for money paid for the use of the defendants. The defendants pleaded the general issue. The cause was tried at the *May* term, 1815, of the court of common pleas of *Tioga* county.

On the 2d *January*, 1813, an order was made by two justices of the county of *Tioga*, and directed to any constable of the town of *Owego*, (now the town of *Tioga*,) which order recited that *Robert M'Phee* had come to the town of *Owego*, not having obtained a legal settlement therein, and had become a charge to that town, and adjudicated that his last settlement was in the town of *Seneca*, in the county of *Ontario*, and directed his removal thither. The overseers of the poor of the town of *Seneca* appealed from this order to the court of general sessions of the peace of the county of *Tioga*, which, in the *May* term, 1813, of that court, quashed the order of removal, and also ordered the overseers of *Owego* to pay to the overseers of *Seneca* the sum of 71 dollars and 40 cents, to reimburse them for the money which they had expended for the relief of the pauper, between the time of his removal to *Seneca*, and the determination of the appeal, and also 32 dollars and 93 cents for their costs. It was proved, on the part of the plaintiffs, in the court below, that *M'Phee* was, at the time of the reversal of the order of removal, in such a state of health that he could not be taken back to *Tioga*; and that from the 5th day of *May*, 1813, when the order of removal was quashed, to the 20th of *September*, 1814, when he was reconveyed to *Tioga*, the plaintiffs below had expended the sum of 199 dollars and 23 cents for his maintenance, and that they had also paid 24 dollars for removing him to *Tioga*. A witness on the part of the plaintiffs below proved that in *June*, 1813, he went, at the request of the then overseers of *Tioga*, to the town of *Seneca*, for the purpose of receiving the pauper; but that being so ill that he could not be removed on horseback, the only means of conveyance with which the witness had been furnished, the witness refused to take him, and left him in the charge of the overseers of *Seneca*, as before. The plaintiffs below having rested their cause, the defendants

ALBANY,
August, 1816

OVERSEERS OF
TIOGA
v
OVERSEERS OF
SENECA.

moved for a nonsuit; which was overruled; they then offered to give evidence of certain facts, (which it is unnecessary to state,) but the court rejected the testimony, and a verdict and judgment were given for the plaintiffs below. The defendants below, the present plaintiffs in error, tendered a bill of exceptions to the opinion of the court below, which was removed into this court by writ of error. The cause was submitted without argument.

SPENCER, J., delivered the opinion of the court. If it be admitted at all, it must be with great hesitation, that, if even the pauper's legal settlement was in *Tioga*, the maintenance of him by *Seneca*, without the request, and without any promise by the overseers of the poor of *Tioga*, will give them a right to maintain an action of assumpsit. The cases of *Simmons* v. *Wilmot*, (3 *Esp. Rep.* 91.,) and of *Wennal* v. *Adney*, (3 *Bos. & Pul.* 247.,) certainly favour the idea, that, in such a case, an action of assumpsit could be maintained, on the implied promise resulting from the legal and moral obligation, on the part of the town where the pauper is legally settled, to provide for and maintain him. The case of *Atkins and another* v. *Banwell and another*, (2 *East*, 505.,) is directly to the contrary; in that case, Lord *Ellenborough* held, that though a moral obligation was a good consideration for an express promise, it had never been carried farther, so as to raise an implied promise in law, and he said there was no precedent, principle, or colour, for maintaining the action.

But, in the present case, there is no proof that the pauper was legally and rightfully settled in the town of *Tioga*; the legal presumption is against the fact; for the order appealed from, adjudicated the pauper's settlement to be in the town of *Seneca*, declaring it not to be in *Tioga*. The subsequent reversal of that order, proves only that the settlement was not in *Seneca*, and *Tioga* has been subjected to all the consequences provided by the act for making the order, by being adjudged to pay the costs, and the expenses incurred in providing for the pauper, intermediate the order and the reversal of it by the sessions.

The act (1 *N. R. L.* 284.) has provided for such a case. It authorizes overseers of the poor of a town, where a pauper is taken sick, so as to be incapable of being removed, to give notice to the overseers of the poor of the town where he is legally

settled, of the name, condition, and circumstances, of such poor person, requiring them to take care of, &c., such poor person; and, in case of neglect, it gives a summary process to levy all sums of money necessarily expended in his maintenance.

I will not say, that this is not a cumulative remedy, or that it takes away a common law right to maintain an action of assumpsit for the expenses incurred. But, in the present case, if the objection could be surmounted, that here this is no promise, on the part of *Tioga*, to pay these expenses, nor request to keep the pauper, the foundation of the action fails; there appears to be no moral obligation arising from the pauper's settlement in *Tioga*, because the fact does not appear to be so.

It may be said, that *Tioga* was the cause of the expense incurred by *Seneca*, in this, that the pauper was illegally imposed on *Seneca*, and it was bound to provide for him to prevent his perishing. *Tioga* has paid the penalty of that act, by being subjected to the charges of maintaining the pauper between the time of making the order and its reversal, and the costs therein. I give no opinion, whether an action on the case could not be maintained, by the overseers of *Seneca* against the overseers of *Tioga*, for these subsequent expenses, provided it should appear that the pauper had no legal settlement within this state; that would present a different question. This action, under the circumstances of the case, is not maintainable.

Judgment reversed,