Jones, Chancellor.
This was an action of debt in the common pleas of Columbia county, on the bond executed by John Donnelly, the reputed father of an illegitimate child, and the defendant and others as his sureties, to the overseers of the poor of the town of Clermont, in the county of Columbia, with condition to save, defend and keep harmless and indemnify, as well the overseers and their successors for the time being, as also all and every other the inhabitants of the town, of, from and against all costs, charges, taxes, rates, assessments, damages or expenses, for or by reason of the birth, education and maintenance of the child, or in any wise relating thereto; and of and from all actions, suits, troubles, damages and demands, touching or concerning the. same.
Nature and action Mom9
, Two breaches of the condition were assigned 5 but they were in substance the same, differing only in form. The substance of them was, that the defendant, or the other obligors, did not save harmless and keep indemnified the overseers of the poor and the inhabitants of the town, according to the condition of the bond; and that by reason *thereof, the plaintiffs were forced and obliged to lay out and expend, and did necessarily lay out and expend divers large sums of money, to wit, two several sums of $100, in and about the birth, education and maintenance of the child. On an order for a bill of particulars of the covenants broken and money paid in the premises, the plaintiffs specified the covenants to save harmless, &c., as the covenants broken, and the sum of $16 in and about the birth of the child, and $75 in and about the maintenance, &c., as the sums paid. ,
Breaches,
T).11 , .. eulara.
The defendants then pleaded three pleas: 1st. That the plaintiffs were not forced or obliged to expend the several sums of $100, specified in the assignment of breaches in *625 their declaration, and that the inhabitants were not damnified by reason, or on account of the birth, education or maintenance of the child; 2d. Payment of the said sever. ral sums of 3d. That the defendant did well and sufficiently defend, save harmless and indemnify the overseers and the inhabitants of the town, from and against the charge.
*624 Flees.
*625 On the trial, the plaintiffs gave in evidence the bond' on which the suit was brought, and an order made by two justices of the.peace for Columbia county, after the birth of the bastard child, whereby the putative father .was ordered to pay to the overseers of the poor, the sum of $16, for and towards the lying-in expenses, and the maintenance of the child to the time of making the order, and the sum of 50 cents weekly and every week, from the day of the date of the order, towards the keeping, sustenance and maintenance of the child, so long as such child should be chargeable to the town, and on which order various sums had been paid, which were indorsed upon it. They then called a witness, who testified that the child was then living and was chargeable to the town of .Clermont, and rested the cause. The counsel for the defendant insisted that the plaintiffs were bound to show the actual expenditure of the money they demanded, and that the order of bastardy was not competent evidence in the cause, nor sufficient to entitle him to recover; but the court of common *pleas overruled the objection, and decided that the order was admissible, and that the plaintiffs were entitled to a verdict for the amount due upon it for the maintenance of the child, at the rate of fifty cents per week, from the date of the order to the commencement of the suit, after deducting the payments, and that proof of the actual expenditure of the money by the overseers of the poor for the support of the child, was not necessary. The jury found a verdict for the plaintiff, and assessed the damages at $50 61, for which the court gave judgment.
Evidence.
Objections: Actual expenditure should be shown.
Order of filiation, &c., not competent evidence.
Overruled.
Verdict and judgment in C. pleas.
A bill of exceptions was taken to the opinion and charge of the court, and brought by writ of error before the supreme court for review; "and majority of the judges of *626 that court reversed the judgment of the .court of comm an „ . . m, pleas, and ordered a venire famas de novo to issue. I supreme court put their judgment of reversal upon the ground that the bond was strictly a bond of indemnity, and nothing more, and that the plaintiffs were bound to show a damnification by the actual expenditure and payment of the money for which they sued. The chief jus tice held that the order had nothing to do with the suit, and was improperly admitted, and Mrt Justice Sutherland inclined to the same opinion; but said that if properly received, it did not vary the case ; that if the expenditure of money had been proved, the order might have been evidence to show that the sum was reasonable and just, but for that purpose ,,only. Mr. Justice Woodworth, who dissented from the opinion of the court, held that the plaintiff was entitled to recover upon the bond, what was necessary for the support of the child, whether the advance was shown to have been actually made or not, and that the order of bastardy was properly admitted. He held it an adjudication upon the subject matter, and conclusive until reversed, upon the sureties as well as the putative father; and that it fixed the extent of the defendant^ liability.
*625 Exceptions.
*626 Reversal,
^ ¿ 0f re. versai.
The leading question is, whether the pkhitiits were bound to prove the actual expenditure of the money for which they sued, in the support, education or maintenance of the child, to enable them to sustain the suit against the ^surety upon the bond, or whether the liability of the putative father to pay for the maintenance of his illegitimate offspring, with the proof that such offspring was chargeable to the town, and the bond to idemnify the town. against the charge, were sufficient to sustain the action, and the order of the two justices in the premises competent evidence in the cause, and sufficient proof to establish the amount which they were entitled to recover.
Leading ques*^al Jkould diture have been shown?
The statute under which the bond was taken, makes provision for the relief of towns from the maintenance of bas-' tard children, when they become chargeable to the town; and superadds a cautionary remedy, by requiring security from the putative father before the birth of the child. By *627 the second section of the act, the putative father, when charged by the mother, on her examination, with’being the father of a child likely to be born a bastard, and- to be chargeable to the town, is required to give security before the birth of the child, to idemnify the town, or to enter into a recognizance to appear at the next general sessions, and tp perform or abide such order as shall then be made in the premises; and the first section of the act authorizes two justices of the peace, after the birth of the child, upon examination of the matter, in their discretion) to make order for the relief of the town, and likewise, by like discretion, to make order for the keeping of such bastard child, by charging the mother or reputed father with the payment of money weekly or other sustentation, for the support of such child, as they shall think-meet. [1]
*626 The statute, 1 R. L. 306.
*627-1 In this case, Hannah Lasher, the mother, having, before' the birth of the child, on her voluntary examination, charged John Donnelly with being the father of a child likely to be born a bastard, and to be chargéáble to the town, the *627-2 overseers of the poor, for the security of the town, took the precaution of applying to a justice of the peace, under the provisions of the second section of the act, for a waarant against him, and the bond in question was given by him and his sureties as the security required, by the act for the indemnity of the town. And after the birth of the child, *upon the application of the overseers of the poor for further relief, and upon examination of the matter, the order authorized by the first section of the act, and set forth in the bill of exceptions, was made. The obligation, then, of the reputed father and his sureties, the obligors in the bond taken before the birth of the bastard, to indemnify the town against the charge of the maintenance of the child, must be admitted ; and the duty of the putative father to pay the weekly sum fixed by the order made after the birth of the child for such indemnity, cannot be denied.
*627-1 under it. Proceedings
*627-2 But this is an action upon the bond against the surety; and the principal question is, whether the order was properly admitted in evidence as the rule of damages which the plaintiffs were entitled to recover. To the admission of the order in evidence for that purpose, the defendant objects. He insists that the bond is, in the strictest sense of the terms, a bond of indemnity, and that the obligation it imposes on the putative father and his sureties, is to reimburse the overseers of the poor the moneys they might expend for the birth, education, and maintenance of the bastard child; and insisting upon this construction of the bond, the defendant contends that the actual expenditure of the overseers is the only measure of damages in the action upon it: and that the order or adjudication of the justices, settling the weekly sum to be paid by the reputed father to the overseers of the poor, for the maintenance of the child, was not admissible evidence to show the extent of the liability, nor the proper rule to be applied to the case.
As to admissibility of the order of filiation.
The bond was a precautionary remedy provided by the statute, for the benefit and security, of the town. It was, in its terms and in its legal effect, a bond of indemnity. But the question is, what the indemnification was which *628 the act intended to secure to the overseers of the poor, and how the obligation to indemnify was to be enforced . ° , o rm t • _ . . . made available to the town l The condition of the bond is to save, defend and keep harmless the overseers of the poor, and their successors and the inhabitants of the town, *from and against all charges, damages and expenses, taxes, rates and assessments, for or by reason of the birth, education and maintenance of a child then yet unborn; but recited in the condition of the bond to be likely to be born a bastard, and to be chargeable to the town. The indem- . . . ° , . mty consists m securing the town against charges and expenses, and against taxes, rates and assessments, by reason of the birth and maintenance of the child ; and this could only be fully and effectually done by keeping the infant, when born, from becoming chargeable, or by providing means to defray the charges in which its birth and maintenance should involve the town. If the child, upon its birth, is permitted by the reputed father to become a charge to the town, expenses inevitably follow, for which the overseers are answerable: and the inhabitants of the town are exposed to assessments and taxation, to make provision for the charge thus thrown upon them. To keep the overseers of the poor and the inhabitants of the town free from these expenses, rates, and taxes, the charge of the child must be borne by the putative father himself, and all the expenses it creates be defrayed by him. The duty of the putative father was to provide for the support of his child. By his neglect to do so, he is chargeable with purposely deserting it, and abandoning it to the care of the public guardians assigned by law to. supply the place which he was bound to fill. He knew, by the recital of the bond to which he became a party, that the mother had declared, in her voluntary examination on oath, that the child was likely to be a bastard, and to be chargeable to the town. The mother was in necessitous circumstances, and the bond grew out of her inability to provide for her offspring, and was obtained by the overseers of the poor, through her agency, for the purpose of securing a provision for the child, and an indemnity for the town.
*627-2 Bond was for indemnity.
*628 Nature of 1» ¿enmity.
*629 indemnity was against a future event;, the probable charge to arise by the birth of an unborn infant. Until the child was born, it was uncertain whether the totra wpuld incur the charge of its maintenance or not; but *when the birth took place, and the charge was incurred, then the obligation of the putative father and his sureties, who suffered the child to become chargeable to the town, bound them to furnish the plaintiffs with the means of its sustenance. It was the primary' duty of the parents, to provide for the child; but, being born out of lawful,wedlock, and' the mother declaring hérself unable to support it, the immediate charge of it devolved upon the overseers of the poor of the town, and the law gave them the right' to call on the reputed father, to whom it belonged to maintain it, for an indemnity against the charge.
The bond in question was given by the putative father and his sureties, to secure such indemnity to the town. The father had it in his power to save the penalty of the bond, by nourishing, the child himself, or by furnishing the overseers of the poor, if he chose to commit the infant to their care, as the trustees and agents of the town, with the means of its nourishment; but in either cáse, the sustentaron was to be at his charge, and he was bound to provide the means of defraying the expense of it.
The object of the act is, as its title, imports, to relieve the town from the maintenance of bastard children; and the town is relieved by compelling the reputed father to sustain the charge. To this end the second section requires the putative father, when charged by the mother, before the birth of the bastard child, with being the father of it, to give security to indemnify the town, Or to enter into a recognizance to appear at the general sessions, and to perform or abide such order as shall there be made. The putative father has the option to give the security to indemnify the town, or to enter into a recognizance to abide the order of the sessions. The bond, if he gives it, or the order of the sessions when made, is for the same purpose, the indemnification of the town. The order which the" sessions make is, in substance, that the father maintain the *631 child, apd the condition of the bond is, in effect, a condi- . . , , , ’ dition to beat the charge of the child s support. The town is damnified by the charge which is brought upon it by the birth of the bastard, and the father’s desertion *of it, and neglect to provide for its sustenance. The law imposes on the officers of the town the liability and duty of providing necessaries for the infant under such circumstances, and it was against this legal obligation that the defendants bound themselves to indemnify the plaintiffs and those whom they represent. To satisfy the intent of the bond, and of the statute under which it is given, the father ought himself to support the child, and prevent its becoming or continuing a charge upon the town, or ought to furnish the overseers of ,the poor with sufficient means to- defray the expense of its maintenance. The town ought not to he required to advance for the father what he is bound to pay ; and, if the overseers are first to incur the expense of •the maintenance, and then to call on the father to repay them their advances, the inconvenience and burthen to the town of the raising of the money, and the incidental losses attending that operation, and arising from the delay of payment, must be borne by them; and the mere reimbursement of the expenditure will seldom, if ever, be a full indemnity.
It was objected that when the action is on the bond, and no expense is shown to have been incurred by the overseers of the poor, there is no rule or measure of damages. But giving the objection its fullest force, the answer to it is, that the act has provided a remedy for the inconvenience, in the order which the first section authorizes the two justices to make, and which establishes the weekly allowance to be contributed by the father toward the maintenance of the child. This order is to be made after the birth of the child, and upon an examination of the matter.; the putative father, upon whom the .order is to act, is to be summoned and heard; and the order, when made, is in the nature of an adjudication, and binding upon him. He had , „ • , , ' 1 I - the right of appeal, but the order, until reversed or varied, is conclusive. It may be altered from time to time, as oc *632 casion may require, to suit the varying circumstances of the case: but during its continuance in force, it is . obliga* tory upon the reputed father.
*631 Measure oí damage8-
Order of filiation and maintenance, may
*632 "This order, when the overseers rest upon it, supersedes the necessity of proof of actual expenditure. In the case of Wadsworth v. Mead, (9 John. Rep. 367,) which was an action of debt before a justice of the peace by the overseers of the poor, upon an order of bastardy, the defendant objected that the plaintiffs were not entitled to recover, without showing that the child had actually been chargeable. The justice admitted the order as prima fade evidence of the child’s being a charge upon the town, but said that the defendant might show payment, or. that the child had been maintained without any expense to the town. Ho such evidence was given, and the justice gave judgment for the plaintiffs. The supreme court affirmed the judgment on both points. They held the order conclusive upon the defendant unless appealed from, and prima fade evidence of the plaintiff’s demand, which rested with the defendant to repel. In the language of the court in that case, “ the order of the justices is the adjudication of a court of magistrates of competent authority, and conclusive upon the party.” It is equivalent to a judgment that he should pay the overseers the weekly sum directed by it, and when admissible, it is always to be received as prima fade evidence of the demand, and it is incumbent on the defendant to show himself exonerated from the payment.
In this case, an order was made by two justices of the town of Clermont, after the birth of the child, upon examination of the matter, the reputed father appearing before them, and being heard upon the subject; whereby it was adjudged that he was the reputed father, and it was ordered, as well for the better relief of the town as for the sustentation. and relief of the infant, that the father should forthwith, upon notice of the order, pay or cause to be paid to the overseers of the poor of the town, the sum of $16 for' the. lying-in expenses of the mother, and the maintenance of the bastard child to the time of the *633 order, and the sum of 56 cents weekly, and every week, from the day of the date of the order for and towards the *keeping, sustentation and maintenance of the bastard child, during the time the child should be chargeable; and by the same order, the mother was ordered to pay 31 cents weekly so long as the said bastard child should be chargeable, in case she should not nurse and take care of the child herself.
This order was not appealed from, but was acquiesced in; and the first sum of $16 for the lying-in expenses, and the maintenance of the child to the date of the order, was paid by the reputed father at the time, and five several sums were afterward paid at different times, and indorsed thereon, leaving a balance of the weekly payments due at the time of the commencement of this suit. The order was before the court of common pleas, and if it was competent evidence in this action against the defendant, and sufficiently established the liability of the reputed father to pay the weekly sum of 56 cents, which he was thereby ordered to pay for the maintenance of the child, the judgment of the court of common pleas was correct, and the reversal of it by the supreme court was erroneous.
But it is contended that the order was not competent evidence against the defendant, because the action was upon the bond of indemnity, and not upon the order, and the defendant, being the surety of the reputed father, and not a party to the order, was not under any legal obligation to answer any weekly payments it required; but was only bound for the reimbursement of such sums as the overseers should actually expend for the maintenance of the child, and which expenditure it is contended they were bound to show, to entitle them to recover on the bond of indemnity.
whether order admissible,
The material question upon this defence is, whether the sureties were bound by the order, as giving the rule or measure of damages in the action on the bond; and in examining this question we are to inquire, first, whether the overseers of the poor had the right, after the bond of indemnity was given by the putative father for the indem *634 nificatiomof the town"from the .charge, to apply for and ohtain "-the order of the two justices as a further remedy in connection with the bond, for .the purpose of determining the weékly allowance to he made by the father, and thus reducing the sum he was to pay for the indemnity of the town .to ¡a certainty; and -in the -next place, whether the sureties were bound to pay-the sums thus adjudged against the principal. In my judgment, the act intended to give the town both the remedies. The bond may, and usually .does precede the birth of the bastard child.; if ¡is ¡a cautionary measure, and principally intended as -a¡safeguard, both to the mother and the inhabitants of the town, against ¡the absconding ¡of the reputed father, The -person .charged as .being the father may, at his election, give the bond or enter into a recognizance ¡to abide the ¡order .of the. sessions, The overseers of-the poor eannot insist upon the repognir zanee; the acceptance of the bond, if .offered, is compulsory. upon them. Why, then, should the acceptance of the bond preclude them from the benefit .of the -further remedy by the ¡order of bastardy ? This order cannot b.e obtained on their application, until after the birth of the child. It becomes, important to them as an ¡adjudication determining and settling, by competent authority, the measure of the indemnity to which they are entitled,, and thus operating as a judgment against the father to a fixed amount, which remains as the standard to which he is obliged to conform. It gives a measure of .compensation, which, if the overseers are contented with it, the father cannot gainsay, and it consequently reduces the claim of the town to a certainty, enables them to .demand weekly the means of support for that week, simplifies the recovery of that de? mand, if withheld, and renders the-indemnity adequate and effectual. It cannot be, that this efficient remedy can be denied to the inhabitants of the town after the birth of the child, because their trustees applied for relief before the birth, and the reputed father .chose to give them a.bond with sureties for their indemnity, instead of a recognizance to perform an order of the sessions.
*633 Whether b0Und
*634 The act does not confine the overseers of the poor to *635 one of these remedies alone. On the contrary, the terms %{ it clearly admit of both, and the policy and spirit of the law appear to me to entitle the town to the benefit of both.
Indeed, the bond of indemnity would often, on the most liberal construction, fail to fulfill the obvious intention-of the legislature, and the -narrow rule sought to be 'applied to :it in treating it as a contract requiring proof of actual expenditure previously incurred and paid, to authorize a recovery upon it, and excluding -the adjudication Or order of the two justices as the rule of damages, would make it a -most inadequate provision.
The act was intended to compel the parents to provide that sustenance for the child, which the laws of -nature re? quire them to provide-; and to relieve and exonerate the inhabitants of the town from the charge. The purpose obviously was, as justice required it should be, to charge the reputed father, in the first instance, with the payment, .of the expenses as they accrued, and not to impose on the town the burthen of the payment in advance, with a pre.carious remedy against the father for the reimbursement of the expenditure. The true indemnification to the overseers of the poor consists in the actual maintenance of the child by -the father himself, or the actual advance of the moneys by him to the overseers, to enable them to meet the expenses as they are incurred. To this end, the two justices are empowered to make the order of bastardy, prescribing the weekly provision to be made by the mother or putative father for the child’s support. It cannot be supposed that the legislature intended to give the reputed-father the right, when called upon in anticipation to secure the town against a probable charge, to compel the trustees to accept a less favorable security than he would be obliged by the act to give them, if called upon to indemnify them against an existing charge: and yet, such would be the consequence, if the indemnity bond which the overseers of the poor on their application before the birth of the child are compelled, if offered, to accept, precluded, them from the benefit of the order of bastardy, as auxiliary to the bond, and that bond did not oblige the reputed father *636 to provide for the child, or to furnish the necessary *means , ,,, , .. to enable the overseers to make provision for it; but' left them to advance the money, and afterwards to call upon obligors in the bond for reimbursement of their advan ces. I do riot perceive that construction to be necessarily required by the terms of the act, or the policy of the law. The suppression of the mischief intended to be guarded against, which was the public charge of the maintenance of illegitimate children, and the advancement of the proposed remedy, which was to coerce.the reputed father to sustain the charge, require and justify such'a construction as will best protect the town, and -most effectually charge the reputed father for its exoneration. The subsequent provisions of the act, which authorize the attachment of the estate of the mother or putative father who absconds, and the sale of the personal, and the appropriation of the rents and profits of the real estate to the maintenance, nurture and education of the bastard child, show the settled purpose of the legislature to make the putative father and his estate primarily liable to the support of the child. .
• Why then should the security, taken from the putative father before the birth of the 'child, as a precautionary measure against the probable charge, be held to stricter terms, or governed in its application by the rules of evidence applied to mere bonds of indemnity between individuals, when no rule or measure of damages is agreed upon by the parties, or settled by'any competent authority? Why is this bond, given to public officers in their official capacity under an act of the legislature for the security of the inhabitants of the town against a public charge brought upon it by the principal obligor himself, to be limited in its practical effects to the mere purpose of a bond of indemnity against contingent and incidental damages, by persons not otherwise under any legal or-moral obligation to bear them, or to indemnify against thern? Why must the bond be treated as an insulated security to the town simply, affording a remedy for the reimbursement,of moneys first to be raised by the town and expended by its agents ? Why may it not be held a component part of a system *637 of remedies '^provided by the statute, and be taken and construed in connection with the subsequent order ? Why may not the overseers of the poor, in furtherance of the declared intent of the act, be permitted, after the bond is given, to obtain and "use the order in subserviency to it, and as an auxiliary aid for the relief of the town against the charge of the bastard child, by settling the amount which the father is to pay and the town to receive, for its indemnification? The subsequent order is entirely consistent with the previous bond; I see no reason why it may not be used as a supplemental remedy in connection with the bond to regulate the recovery of damages in an action upon it. The right of the overseers of the poor to the order, and the liability of the putative father under it, seem to be admitted; but it seems to be supposed that they are distinct remedies, and must be separately pursued. The plaintiffs, it is said, might have sued on the order, but when they elected to proceed on the bond, they could not use the order as evidence to enable them to recover. But this reasoning is inconclusive. It does not follow that the order is inadmissible in evidence in ah action on the bond, because an action might, have been brought on the order itself. The order is a judicial assessment of the weekly contribution which the father is bound to make, and which the overseers of the poor, as trustees, are entitled to demand of him for the maintenance by them of . the bastard child, and the indemnification of the town against the charge. It must be conceded that in an action on the bond against the putative father, this adjudication determining the amount he is to pay, and by which he is conclusively bound, would be competent evidence; and must, if insisted upon by the overseers, be decisive of the measure of* damages and the amount of the recovery. It would be as binding upon him as an admission or agreement in writing voluntarily given by him; and if it would conclude him, why would it not be conclusive upon his sureties ? The bond is joint, and the condition of it is to indemnify and save harmless the plaintiffs against the charge and expense *of the birth and maintenance of the child. Sup *638 pose the effect of it to be an undertaking fey them -as sure-^es’ l^at he, as principal, shall indemnify the town against the charge, still they' are answerable for his faithful performance of his obligation to indemnify in the manner he may be fey law bound to -do ; and a judgment by a compeAuthority, determining the mode of making the indemnification to whieh the town is entitled, is conclusive upon him, and must be binding upon his sureties.
Order of Aliaon’auretiea8"176
Póthier gives it as the rule of the civil law, that the .dependence of the obligation of a surety on that of the principal debtor to -which it is accessary, causes -the surety «to be regarded as being the same party las the principal debtor, in respect of whatever is' adjudged for or against the- principal debtor. (1 Pothier, 441. Traite des Obl., part 4, ch. 3, see. 3, art. 5.)
It is objected that the sureties are not parties to the order ; "but their -undertaking was, that the town should be indemnified against -the charge. It was the duty of-the principal to sustain the charge against which the indemnity was given; on him the overseers were to call for that indemnity ; -and «they were entitled to ‘halve recourse to the order as a means provided by law for coercing him and for settling what that indemnity should be, and how it" should be provided -and paid. To these -proceedings the sureties could not be -parties; yet they reduced to certainty the general obligation of the principal to the town; and if he was legally bo und by them, his sureties, who were jointly bound with him for the performance of that general obligation, -must .fee" -answerable for the performance of -it.' according to the-adjudication of the tribunal authorized to make the adjustment.
Suppose a bond to -indemnify against an unliquidated ^mand, or a trespass, the surety would surely fee bound the amount of a j udgment against his principal, ascerlining the amount Of-the damages for which -the principal was answerable, and .'such judgment would fee evidence against -him, though nota party to it, in an action fen the bond. So here" the adjudication .of the two justices was equivalent -to a judgment, It ascertained the amount of *639 the indemnity due from the father to the town for a given time, and that judgment, therefore,, would serve to give the . mi i rule of damages on the bond against the surety. The objections, therefore, so strenuously urged on the argument, that the obligation of the defendant in error is strictly a bond of indemnity, and that, being a mere surety, the adjudication against the principal does not conclude him, but evidence of actual expenditure was indispensable to' recover against Mm, ,1 must consider as unavailing.
*638 Where fmiuiyis t0 against jaands0d judgment against wouMbe evidence against
*639 Order of filiadamages against sure*
If my views of the obligation of the defendant to' the plaintiffs are correct, the substance of the undertaking was, that the sustentation of the child, if it should be born and become chargeable, should he borne by the putative father; and the inhabitants of the town and their trustees, the overseers of the, poor,- indemnified' and exonerated therefrom ; and the order was a regular judgment by a competent jurisdiction, determining and reducing to certainty the extent of the obligation of the putative father, and was admissible evidence of the demand in this cause, which must prevail, unless the defendants could show themselves legally exonerated therefrom.
It was urged ;as the general rule applicable to contracts of indemnity, that the party who is to be indemnified cannot maintain-an- action on the contract, against the indemnifier, until he has been damnified. But that rule does not necessarily, and in all cases, require the actual payment of the damages or expenses incurred, to enable the party to sue for and recover the indemnity. When the obligation is- to indemnify against damages or expenses, and th.e obligee has become absolutely bound and liable to pay the-expense or damage incurred by the charge, and his demand against his obligor upon the bond of indemnity, by reason of the charge against himself, is reduced to-a certainty, it would surely he just and reasonable, and would violate no principle of law, to permit him to enforce his own demand against Ms obligor in the first instance, and before he satisfies the charge against himself. It is an operation which. *avoids circuity; and essentially subserves the purposes of *640 justice and equity, by enabling him. who is entitled to the indemnity, to obtain the means to satisfy the charge he has incurred from the party who ought to bear it, and thereby saye himse¡f the necessity of an advance and payment out of his own funds and estate, which might be inconvenient and perhaps involve him in serious embarrassments.
*639 General^ rule bond°ofindem^ must ac-fore suit, how far <tualifiea*
*640 The bond which a sheriff is to take of a prisoner, in his custody on final process, in civil suits, whom he' permits t0 go at large within the limits of the liberties of the jail of his county, was held by this court, m the cases of Jansen v. Hilton, (10 John. 549,) and Barray v. Mandell, (10 John. 563,) to be, in its legal effect and • operation, a bond of indemnity; yet the sheriff, in an action on the limit bond, is not held to "proof of the actual payment of the debt, to entitle him to recover. A judgment against him for the escape' of the prisoner, is admitted as sufficient evidence of damnification, and of the amount of his indemnity to which he is entitled from the obligors in the bond to him. In the case of Kip v. Brigham, (6 John. 158,) it was held that as the bond was, in effect, a bond of indemnity, the judgment against the sheriff was conclusive evidence that he had been damnified to that extent. And in 7 John. 168, it was held that a verdict against the sheriff was competent evidence of the amount of his demand against the sureties on the limit bond. In neither of those cases was proof given or required, to show the actual payment of the money by the sheriff.
A sheriff may Snit61 bond) without actual
It was objected that the bond to the sheriff differs from the bond to the overseers of the poor in this, that the obligation to the sheriff is not technically a bond of indemnity; but is conditioned that the debtor shall remain a true and faithful prisoner, and shall not escape or go without the limits of the liberties of the jail, and that the penalty of the bond would be forfeited by the escape of the prisoner. The answer is, that this court held it to be a bond of indemnity ; and that the condition was not broken by the escape of the debtor, but that the recaption or voluntary return of the prisoner before suit brought against the * sheriff, was a defence to the sheriff against an action for the ea- *641 cape: and the judgment of the supreme court, which had established a different principle, was reversed. It is now settled, therefore, that the limit bond is, in effect, a bond of indemnity, and that the sheriff, when he sues upon it, cannot recover upon proof of an escape, but must show that a verdict has been obtained against him for the debt; . ° 1 yet he is not bound to show that the money has been actually paid. Why then is not that case analogous in principle to this ? The obligation on which the suit is brought being in each case a bond of indemnity, must not the rules of evidence be substantially the same in both ? and if the sheriff may sustain an action on the bond taken by him for his indemnity against the escape, for the debt for which he has become liable by the escape of the debtor, without first paying the money for which he has thus become liable, why may not the overseers of the poor recover against the putative father and his sureties, on the bond given by them for the indemnity of the town, the amount of the expenses incurred by them in the support of the child which has been suffered to become a public charge upon them, without first actually advancing and paying the money ? and if the verdict against the sheriff was competent evidence of his demand against the sureties on their bond to him, why is not the adjudication of the justices in favor of the overseers of the poor against the putative father, competent evidence of their demand against him and his sureties on the bastardy bond to them ?
Though he musJ¡ , verdict against him.
The question comes back to the competency of the order of bastardy, as evidence of the measure of damages; for admitting the obligation to be a mere contract of indemnity, if the order established the amount of the indem.nification for which the obligors were bound, no further testimony on the point could be necessary.
But it was strenuously contended that the averments of the pleader in his declaration, called for proof of the i - r al expenc lture of the money for which the suit was brought, The condition of the bond in this case being a contract of indemnity against damages and expenses, by ^reason of birth and maintenance of the child, if born a bastard, and *642 chargeable ta the town, the forms of pleading, may require that the’ plaintiffs should aver in their declaration,-, or in their replication to the plea of non damnificatasj if the- declaration is general and that plea is interposed, that the -defendants-did not- save harmless-and indemnify them and the inhabitants of the town from- the damages and expenses’ of the- birth and maintenance of the child, but refused and neglected so- to do, by reason Whereof they,- the plaintiffs, Were bound to expend,, and-did expend the money necessary for that' purpose. When these averments- are made' in the-declaration (as is- done in the present cáse,) the defendant obviously' cannot interpose the plea of non damnifl-• catus, but must-'answer the. plaintiff’s allegation of damages by the' actual expenditure of money averréd to have been-forced upon them for the maintenance of the child. If the defendant has a defence to- that part of the case, he is to-avail himself of it by taking issue on the averments in the’ plaintiff’s declaration. But it would not be the necessary consequence- of the- averment, whether made in the declaration or replication, that proof must be made of the actual-expenditure by-the overseers of the poor of the money sued for, to sustain the action.- When the child, being the illegitimate offspring of the reputed father, became chargeable to the town, the law imposed it as a duty on the inhabitants of the town to provide it the sustenance necessary for its support; and as'long as-it continued a charge- upon the town, the law will intend that it has- been provided for by the- overseers- of the poor, on whom- that duty devolves. The statute entitles the town- to relief against the burden of this charge, by causing or imposing'the obligation upon-the mother or putative father; but that remedy does not discharge the town- from the duty.- If the' father neglects or refuses to fulfill his- obligations, the charge mast still fall-upon the overseers of the poor,- and their redress is by recourse to him. In pleading, therefore, they must aver not only their liability and his- obligation, but in addition, state his default and the payment by them; in consequence of it. But if the * views I have taken- of the- rules of evidence applicable to the case ar’e correct, it will- be'sufficient; to ptiovd *643 ’that the bastard child did in fact ’become chargeable, and that the defendant bound himself to indemnify the town against the charge, and to show the rate of allowance judicially established, to entitle them to recovery. The law will intend that the-overseers have in fact borne the charge, until the contrary is shown. The right of action results, therefore, from the actual proof or legal presumption that the plaintiffs have borne the charge of the bastard child, and the weekly allowance directed by the 'order of bastardy gives the measure of damages, or the amount which the putative father was bound to contribute, and which the plaintiffs were entitled to recover.
*641 whether proof a<rtual ex> penditure was required by the tho^declar™
*643 But suppose my views of that part of the case should be erroneous, and the order should be held to be inadmissible, another question has been raised, which is, whether the fact of actual expenditure is not admitted by the pleadings ? It is contended by the plaintiffs that the defendant has not put that fact in -issue, by the plea in this case; but has, by pleading admitted the allegation of the plaintiffs in his declaration, of the actual expenditure of money to be true, and put himself on the point that the expenditure was not compulsory upon them, but voluntary, and in their own wrong.
Whether actu - al expenditure is admitted by the plea.
I incline to that opinion. The plea is, that the plaintiffs were not forced and obliged to expend and pay the two sums of $100 mentioned in the declaration, or either of them, in and about the birth, education and maintenance of the bastard child; and no answer is given to the allegation that they actually did expend and pay those two sums of money. The actual expenditure would seem, then, to be by the rules of pleading admitted; and the objection taken by the-pleader to be, that the plaintiffs were not bound to expend the money, but did it of their own wrong, and therefore cannot make the defendants answerable for it.
*The latter clause of 'the plea does not appear to me to alter the case. It is merely a plea of non damnificadles as to the inhabitants. It purports to answer that part of the declaration which states that the defendants have not saved harmless, and indemnified the inhabitants of the town from :and against the charge.
*644 The case of Hays v. Bryant, [1 H. Bl. 253,) was relied upon, and its bearing, as I understand it, upon the case now under consideration entitled it to attention. It was an action on a bond to indemnify the church wardens and overseers of the poor, and inhabitants and parishioners of Ridgwe^i against the charge of the maintenance of such child as should be born of Eliz. Winch, and become chargeable to the parish. The pleas were, 1st. Non est factum; 2d. Non damnificatus. To the second plea, the replication was that E. W. was delivered of two bastard children; that the defendant did not provide food and nourishment for them, and that the inhabitants were forced and obliged to expend, and did necessarily expend £3 in providing the same; and so were damnified. The defendant rejoined, that there was no justice’s order on the inhabitants, &c., and if they did expend the money demanded, it was of their own voluntary act and wrong, and if they were damnified, it was of their own act or wrong. The surrejoinder was that they were damnified.
Hays v. Bryant (1 H. Bl. 253.)
It was proved at the trial, that the defendant had agreed to pay 2s. 6d. per week for the maintenance of the children, and in part had paid it up to Michaelmas, 1787, and then refused, alleging that the sum was too great. It was objected that the plaintiffs or parishoners were not obliged to maintain the children, unless a justice’s order had been previously obtained for the maintenance of them. The objection was overruled, and a verdict found for the plaintiffs. On a motion to set aside the verdict and enter a non-suit, the court held that an order of a justice was not necessary to make the officers of the parish liable to do what they were otherwise under a legal obligation of doing, viz.: to provide necessaries for the children; and they discharged the rule.
*In that case, the proof at the trial was, an agreement of the defendant to pay 2s. 6d'per week for the maintenance of the children, and his refusal after the day mentioned, up to which he had paid the weekly allowance, to make any further payment. No evidence appears to have been offered of any expenditure or payment of money by the *645 plaintiffs, and the verdict was founded on the defendant’s agreement to pay, and must have proceeded, either on the principle that no proof of actual expenditure was necessary, or that such expenditure was admitted by the pleadings, as the defendant, instead of traversing the averment of actual expenditure, made in the replication, had, by his rejoinder, alleged the payment, if any, to be voluntary for want of an order of the justices. In either view of it, the case is an authority in favor of the plaintiffs in the present suit. It establishes onef of these two positions: either that the fact of expenditure, if averred by the plaintiffs, and not denied by the defendant, is admitted, or that the agreement of the defendant to make a weekly allowance is sufficient, without the proof of payment by the plaintiffs in his default.
The judge of the supreme court, who adverts to the case, observes, that the plaintiffs had actually expended money in support of the childand that the defence was, that it was paid voluntarily, the payment being without the authority of a justice’s order, and that the court held such order not to be necessary, and that the parish, officers, having actually expended money in support of the child, were entitled to recover. It is true, that the defence taken by the defendant, was the want of a justice’s order; but how does it appear that the plaintiffs had actually expended money in support of the child, or that such expenditure of money was the ground of the judgment of the court? Before the defendant was put upon his defence, the plaintiffs were to entitle themselves by competent proof to a verdict, and must consequently have adduced all the evidence required by law to establish their right to recover. What was the evidence which they did adduce ? It is detailed *in the report, which we must suppose to contain all the evidence that was deemed material. According to the report, it was proved that the defendant had agreed to pay 2s. Qd. per week for the maintenance of the children, and in fact, paid it up to Michaelmas, 1787; and then refused to pay any farther instalment or weekly payment, alleging that the sum was too great; and on this evidence the ver *646 ^Ct Was §*ven 5 the defendant’s objection to the obligation of the .plaintiffs to maintain the children without as justice’s , f' , . • J ■ __ order for the purpose, being overruled by the judge. B o mention was .made, either on the trial,, or by the court, of any expenditure of money by the plaintiffs. The judge at the trial, -and the court at bar, overruled the objection taken by the defendant, on the ground that an order -of a justice was not necessary to make the officers of the parish liable to do what they were bound by-law to do, namely, to provide necessaries for the ¡children, which they were otherwise under a legal obligation of providing.
The legal obligation of the plaintiffs to provide necessa ties for the children, and the engagement of the -defendant to indemnify -them against that obligation, by the weekly-payment of 2s. %d. for the children’s maintenance, and his refusal tó continue his weekly payments, were held sufficient to entitle the plaintiffs to recover. The actual expenditure of money by the plaintiffs ^ in support of the children was not shown, and consequently was not-deemed essential to the plaintiffs’ right to recover. If, then, the actual expenditure of money by the plaintiffs in support of the children, was in strictness and according to the technical rules applicable to the form of pleading, or the frame of the condition necessary to the recovery, the fact of such expenditure .must have .been considered as' admitted in pleading, or the actual proof of it before the jury superseded or dispensed with, by the agreement of the defendant to pay the weekly sum agreed upon for his discharge from-his liability. ■
If, then, in the case before the court, the defendant, by taking issue on the compulsion to pay, has .admitted -the fact of expenditure of money by the plaintiffs for the support *of the child, the .plaintiffs were undeniably entitled to judgment-; and if the fact of expenditure can be considered as in issue, the adjudication of the ¡justices settling .the amount of the allowance to be paid by the putative father to the overseers of the poor, as the compensation for the marge, according to my views of the case, must be conclusive in favor of the plaintiffs, and entitle them to a ver *647 diet for the amount of the weekly allowance, on the.ground . , , , , that they must he presumed to. have- supported the child-which was proved to have been a charge upon them-, and that the adjudication of the justice settled the amount to. which they were entitled for the. expenses, incurred by them, for such support.
It was competent to the defendant, under pleadings adapted to the; case, to: have shown, if the fact was so, that the expenses of the nursling had been defrayed by the. father- himself, or by his procurement, or had been grataitously- borne, and that the to-wn had been, by those or other- means, relieved from the maintenance of the child, (Richards v. Hodges, 1 Mod. 43 ; 2 Saund. 80.) But unless some such defence was successfully made, he has-no just ground of complaint of a verdict and judgment against him for the weekly allowance.which the putative father was adjudged to make for the support of the ehild.
The plaintiffs at the trial gave the bond in evidence, and proved’ that the child was- living and was chargeable to the town of Clermont. The defendant offered no evidence 'in his defence;- and" a verdict against him necessarily followed. The only question that could remain, was the question of damages. If there had been no. adjudication against the-father, assessing the amount he should pay for the demnifíeation of the plaintiffs; and there had)been no mission in pleading of the amount demanded-, other evidence might have been necessary to enable the jury to assess- the damages. But the plaintiffs, might, in such case, have shown that the father had, with the consent and concurrence of his sureties, agreed to pay a weekly or monthly sum for the maintenance of the ehi-ld; and, on the principle of the case of ’Hays and Bryant, have recovered that %um for their- indemnity against the charge; or, as I apprebend, it would have been sufficient for them to show what sum was reasonably necessary for the support of the child during the time it had been chargeable to them, and for that sum, if the child was shown to have been provided "or by their procurement, the j ury would have been warranted in giving their verdict. Other cases might he ,put; *648 the town, for example, may have an establishment upheld by a common fund, or supplied by the contributions of the inhabitants in money or provisions, for the maintenance and support of those who are chargeable to it, and where provision is made for illegitimate children, as well as paupers ; or the infant may be left with the mother by the overseers of the poor, under some arrangement with her for a reasonable allowance for its support; or expenses may be incurred by the town for its maintenance, which, from want of means, or from forbearance, or other causes, remain unpaid. In none of these supposed cases, each one of which may occur, and is within the scope of probability, would there be an expenditure or actual payment of money ; and could -it be pretended that in any one of them the overseers of the poor would be disabled, by that cause, from recovering a reasonable and just compensation for the maintenance of the child ? The measure of damages might, in some of these cases, be attended with difficulties which might sometimes be insuperable; but the right of the plaintiffs to compensation for the use of those who might have a claim upon them for the maintenance of the child, and thus enabling them to satisfy the charge, would be undeniable, and the difficulty of the remedy alone would obstruct it. In the present case, the overseers of the poor, to obviate all difficulties on that point, have had the precaution to obtain the further relief provided by the act, in an order of bastardy, by which the weekly contribution of the reputed father to the overseers, for the support of the child, is judicially arid conclusively settled and determined. This adjudication was in evidence; and, in my judgment it was conclusive upon both the father and his sureties as the rule of damages in the action on the bond.
*647 0 f in bastardy bond, bag been no fi^a* no liquidation agreement. by
*648 *Upori any other construction of the act, the inhabitants of the town, whose agents are compelled to accept the bond of indemnity, if offered, must often lose their remedy upon it against the surety, or be put to the inconvenience of actually advancing money for the maintenance of the bastard child; and in all cases where the infant is provided for by the ..overseers, by other means than the actual expenditure *649 of money, all recourse to the surety on the bond of in- , ■” . y demmty for compensation, must be defeated, lo .. ... „ „ this bond, then, as a contract requiring positive proof of the actual expenditure of money in the support of the child, and in all cases excluding a subsequent adjudication of justices, settling the rate of compensation, or any parol evidence of á reasonable allowance for establishing a right of recovery, would be to construe it most beneficially for the ease and benefit of the obligors, to the grievance, inconvenience and loss of the obligees, and the inhabitants of the town whom they represent as their trustees. I am not prepared thus to favor the wrong doer or his sureties, at the expense of those who are involuntarily drawn into liability by his misconduct. I think every fair intendment should be made in favor of the trustees of the town, and that they are entitled to a liberal construction of the act for the suppression of the mischief it intends to suppress, and the advancement and beneficial application of the remedies it provides for them.
But it is said that the child has been supported by the mother; and that the town, therefore, has not been damnified. This point is not made by the pleadings, and no evidence could regularly be adduced in support of it. If available to the defendant, he should have set it up in his defence by plea. Then the plaintiffs might have taken issue upon it, and been prepared with evidence at the trial to meet it. But how does it appear that the child was nurtured by the mother ? The witness who proved that the child was chargeable to the town, on his cross-examination, stated, that it had always lived with its mother in the town. This witness had sworn, on his direct examination, that *the child was a town charge; and if its living with its mother seems to interpose a difficulty, the solution of the problem may be found in the order of bastardy. The justices, by that order, adjudged that the mother should pay to the overseers the sum of 31 cents weekly, as long as the bastard child should be chargeable to the town, in case she should not nurse and take care of the child herself; and the child was permitted to live with her, to enable her to
*650 satisfy the, adjudication, by being its nurse, instead of pay ing- her contributory part of its, expenses. The father’s. contribution was-to procure, the other necessaries and. eom>forts; which-.the-nursling would stand in,need of. She.was to nurse and take, care, of the child, and as it must neces? sadly- live with her, to enable her to. nurse it, an. allowance may have been made to her for its sustenance and. other necessaries. The. arrangement between- the overseers and,the mother,- was.not known-to the witness,; but he; understood- from general report, and believed-.that the child, was, provided for by the; plaintiffs, as-the. agents of the. town. It must be- intended that, such was, the- case. There was. n.o, motive- with the mother,-, or with the agents of the town, to, exempt the father, from his contribution to. the child’s support ; or to furnish gratuitously the.provision he was bound; to, make. The, fair intendment is, that, if the. plaintiff’s, ease, and the issues between the, parties- bad required it,, proof/would have been, given of the; arrangement with, the-mother, and the allowance to her for the nurture of the, child,, or other provision.made. by, the plaintiffs for its.supporfc, which so, many circumstances- indicate; to have, existed.
*649 WhethBr the tm-ed by the ^a^terma °a
*650 The order, of the justices on the mother,, to contribute ^ the weekly sum-, of- 31’ cents to the. overseers, of the poor towards.the support,of the- child, or to, nurse and take care, of it herself, is, strong presumptive evidence, to show that, fhe. child w.as, put; into the keeping, of the mother by the. and to raise an obligation upon, the overseers of the- poor, even if no express contract, existed,, to. make, her a-just5 and reasonable allowance for its. sustenance.
W hflt is 0Y1* dence of proseere^of^he poor to pay ^bastard child for, its
*The.case of Stevens-, and Hoag, overseers of. the..poor of the town oi Dover v. Loretta Howard, (12 John. 195,) was; cited to. show that the, mother, had no. cause, of action. against.the. overseers; for. the support of. the child,, unless there-, was an- agreement between them to pay her.
Stevens v. Howard, (12 John. 195.)
That;was an-action by the mother against the overseers, and the.objection was, that there.was no.proof.to show that. the bastard.cbildtemwere put.into- her keeping by the overseers* or that there was .any express promise or. engagement- *651 on their part to pay her for their maintenance, nor any- evidenee that the-defendants had received, any money-directed , , ., „ , . „ . by the orders to be paid for the- maintenance of the* children-; and' the court said, that the- law would not raise a promise upon the mere naked fact that- orders had- been, made. From- these reasons it is fair to infer;, that, if either-of the grounds suggested by the court had been shown, either an agreement to. pay,, or the placing the: children, with her, which would have implied a. promise to- pay, or the- receipt of money to* enable them, to pay;,' she- would have prevailed. The* court, too, in that case, assign as further reasons for their- decisions, 1st.. That the plaintiff had not shown, as- she ought to have done,, that.the;children-continued* ehargeable to the town; and. 2dly. That. the. defendants were understood by their- acts, to. have; offered to; show-that they were not chargeable; which-was-competent, evidence, and was- excluded. That, ease, then,, goes far to, show that the mother might recover in this case,,; for the. proof, in- this case, of the child’s continuing, chargeable and, being with the mother; and th e, presumptive .proof of an express or implied promise to pay her for its sustenance, distinguishes this case- from that, in- the leading- features- and actual circumstances, and brings this case, within the principle, on which the court intimate that a recovery might have been had in tha.,.
But it is further objected to the judgment of the of common pleas, that the verdict is upon- the first issue only; and that the jury have, not, passed upon the the pleas: of payment and of. indemnification,, or performance; *One answer to this objection, was,, that it, had not been taken in the court below, where it, might have been obviated. But without relying upon that answer,, andwhieb, moreover, was not. admitted to, be. true, in point, of: fact, I am satisfied that the objection ought not, to prevail. The issue on which the jury passed, comprised the whole. merits of the cause. It appears from,the; bill of and was admitted on the argument, that no evidence! was given on- either of the other issues; The proof of the affirmative of those issues rested with, the; defendant,, and he *652 abandoned, them; there was nothing in relation to them for the jury to pass upon. In strictness, perhaps, there should have been a finding for the plaintiff against the payment an¿ indemnification or performance set up by the two last pleas of the defendant; but such finding was mere matter of form, and the objection to the want of it is purely technical. The intention of the jury is manifest; they could not find for the plaintiffs and give them damages, without negativing the two latter pleas of the defendant; and the . 6 ' „ , n. , , . . . omission to enter a formal verdict on the issues joined upon ^ose pleas, is obviously a mistake of the officer who recorded it; and I concur with Lord Mansfield’s opinion, in the case of Hawkes v. Crofton, (2 Burr. 698,) that in a clear case¡ the court may give judgment upon the substantial finding of the jury, though the clerk may have been irregular and faulty in point of form. This omission or defect not affecting the merits of the cause, might be amended, and all defects or errors properly amendable, may be amended in this court, or passed over without being actually amended. Cheetham v. Tillotson, 4 John. Rep. 499. This objection ought, therefore, in my judgment, to be disregarded by the court, and I am of opinion, on the merits, that the judgment of the supreme court ought to be reversed, and that of the court of common pleas affirmed.
*651 the verdict covers
' if the merits, • is wt
*652 Mistake in not entering a verfssue^may'be amended, or erro^a^actm ally amended.
Spencer, Senator.
The difficulties which have been discussed in these cases, appear to arise from a misconception of some of the pleadings, and from their being considered *in mass, instead of being applied separately to the different points in the case. The declaration is in debt for the penalty of the bond, in which it was the business of the plaintiffs to assign breaches of the condition. This has been done, and a full understanding of these breaches is essential to the decision of the causes. The condition of the bond, is, that the defendants shall “ from time to time, and at all times hereafter, well and sufficiently save, defend and keep harmless and indemnify” the plaintiffs, and the inhabitants of the town, “ of, from and against all and all manner of costs, charges, taxes, rates, assessments, damages *653 or expenses whatsoever, for or by reason of the birth, education and maintenance of the said child,” of which Hannah Lasher was pregnant, but which was not yet born. All the judges of the supreme court agree that this was a bond of indemnity ; but the question is, against what ? At the time of executing it, there was no actual charge existing upon the town or the overseers; but one was anticipated, and the bond was taken to indemnify against it. What was that anticipated charge ? the recital of the bond states it: the expected birth of a bastard child. Against that charge, then, it must have been the intention of the parties to provide; and they have done so, in terms as strong as language could make it. They are to indemnify against all “charges, &c., or expenses,” by reason of its “ birth, education or maintenance.” Technically, this condition was broken the moment the child was born, for then it became a charge on the town, and that is the thing against which the defendant covenanted; and that is the first breach assigned in the declaration, which alleges the birth of the child, and that the defendant had not saved harmless the plaintiffs and the town. Here is an affirmative and a negative, upon both of which the defendant might have taken issue by different pleas. He might have denied the birth, and this would have thrown upon the plaintiffs the burthen of the proof of that fact. But he has not done so; and upon the elementary principles of pleading whatever is n°t denied in such an ^action, is admitted. The birth, then, being admitted, it is a legal consequence that the child became a charge to the town, and thus the breach is admitted. But the defendant might have pleaded to the negative part of this assignment: and he has done so by his third plea, in which he avers that he did indemnify and save harmless the plaintiffs and the town. Here, the defendant assumed the affirmative, and was bound to prove it. A complete issue was formed, the defendant averring that he had indemnified, and the plaintiffs having denied it in their declaration; no replication was necessary. This plea admitted the plaintiff’s action, by admitting the charge, and sets up new matter in evidence, that notwithstanding there *654 was such-a charge; the defendant bad kept the-- plaintiffs; harmless from it. So-far the-plaintiffs’ action is confessed, by the pleadings; and the burthen of disproving it.is. thrown; on the defendant. Had the1 assignment, of breaches stopped here; many of the. questions would; not have-, arisen that, have been- discussed. But. the declaration; proceéds, and, avers-that the defendant had wholly, refused: to indemnify- and by means thereof the plaintiffs- “ had been forced and1 obliged to, and did lay "out and expend divers; sums of' money;” setting them forth. It. is, perhaps; questionable; whether this-averment was necessary; but'hairing-made: it,, the plaintiffs must abide by it. This averment the-defendant has- selected! as the subject.of the first- plea, and-, he de» nies that the plaintiffs- “"were forced- and obliged.to. expend the-said several sums.of money." If the view already tas ken be. correct, this issue, in, truth,, had nothing to. do- with: the plaintiffs’ right, of action, because, if there, was a-.charge; the action, would lie. But it. goes, to: the. damage; and to> fix the amount, of the recovery; and- it; seems to- me, there.s fore, that it. can hardly be. rejected as-immaterial. (2 East;. 452.) In- such a-, case; I think the. defendant should 'be held/strictly to hi&plea, and having takem issues on. the point of “ being forced and. obliged; to; pay;”- he has; admitted the fact of payment,. The. rule is,(Comyn, Pleader; E. 6,). that the- plea shall, be taken most strongly against the- defendant?;. and. that, a material! and traversable, fact must be ex» pressly stated; and eannot.be inferred. *(7 John Rep. 75;). The. fact, whether the- plaintiff had- expended money,, wastraversable, and the. defendant alleges; material-;: and pr.o.-babl-y it.was. so; and not being expressly denied,, the; denial cannot be inferred;. The: issue, joined; by' the first plea, then, was. on, the- point off the obligation, of the, plaintiffs: tq pay-. Bub.this; the.defendants: counsel urges,, was a question of" law; and issue= could npt, be taken on. it. So, be. it, and so- the court--of common pleas and the. jury considered it, for they have not returned- a verdict omthat.point.' And it is brought within the principle laid, down by Ghitty; (1 Chit. Pl. 520;) that such a defeet in the plea (for- it," will be observed it is- one- of' the; defendant’s making;) is,, aided *655 by the plaintiff’s taking issue on a triable point. The plaintiffs have, in effect, done so in this erase, by treating that issue as a nullity, -and not asking any verdict upon it. Had a verdict been rendered, there might have been more -difficulty; but even then no 'court would listen with much favor to a party objecting to-his-o'wn pleading.
*652 „ . „ Condition of bend.
*653 wag to indemwb^?d
what is not d]e^?gjs^ mitted.
*654 A plea shall he taken most strongly against.the. defendant.
Though plea, taken together, he immaterial, it is aided by the plaintiff's taking issue on. a triable point in it.
*655 'The second assignment of a breach in the declaration- is, that another overseer was obliged to, and did lay out money .for the birth, :&c., of the child. This breach is answered in the same plea, which has already been considered, and which takes issue on the point of obligation to .pay-
The defendant’s 3d and 1st ,pleas have been considered. His 2d plea is, that the several -sums alleged by the plaintiffs to have been paid out by them, have been paid to the plaintiffs by the defendant, and to this plea there is a replication "denying -such payment. Upon this issue the jury have found no verdict, and -it is objected, on that ground, that the judgment of the common pleas Was erroneous. It is doubtful whether this 'point -was raised in the "court below-; but whether it was or not, -it is apparent on the record, and it seems to me must be noticed here. It is undoubtedly a defect for which the judgmentmust -be reversed, -unless it is -amendable. -The cases in Comyn, (Pleader, S. 19,) show this. But even then, an absolute judgment of reversal wóuld not be the consequence, but a *venire de novo would be awarded to try'that fact. Were there, the least -reason -to suppose that any proof -to .sustain the plea had been given, "and that .there.was.even a possibility that -the jury might -find in favor of the defendant, I should feel -it" .a duty to furnish the opportunity, .sinee -it would be 'at his own cost if he ultimately failed. But we have the whole evidence before us, and it is plain that the defendant has been allowed all the payments actually made. Unless, then, the rule of law -is rigid and inflexible, there is no -reason or .justice in this case, for .sending the parties to new trial. This defect is amendable. In Petre and another v. Hannay, (3 Term Rep. 659,) and which, as it -has not been cited, I state more particularly, the defendant pleaded *656 the general issue and the statute of limitations; a verdict was found for the plaintiff on the first issue: and rio notice whatever was taken of" the last. A writ of error was brought on that very point, but the court of king's bench, on application of the plaintiff, ordered an amendment, by entering a verdict for the plaintiff on the second plea. In Cheetham v. Tillotson, (4 John. 508,) it is stated in the opinion which was sanctioned by this court, that “ all defects or errors properly amendable, may be amended in this court; or, in other words, passed over without being actually amended.” And this has ever since been the uniform practice of this court. We are at Iibery, then, to disregard this defect, and to pass it over, because'it is one which the court below would be bound to correct, on application to them.
*655 A verdict on geveraHasUes, but comprising maybe amended °P-error brought, and made to ?agntrstíieother
*656 Or the defect may be passed over- without amendment.
The only issue, then, that is left by these pleadings, is that offered by the defendant’s third plea, that he did indemnify and save harmless the plaintiffs and the town. The defendant held the affirmative, as has been before remarked ; but he has offered no proof to sustain it. He relies on the absence of proof by the plaintiffs, that they had been damnified by the actual payment of money. But by the form which he has himself given to the issue, it was his business to maintain it. I agree with Oh. J. Savage, that if the defendant had pleaded non damnijkatus, the plaintiffs must have replied damage, and if they had *thus assumed the affirmative, undoubtedly they must have shown how they had been damnified. But that is the very difficulty in these pleadings; the defendant has nowhere called upon the plaintiffs to prove they were damnified. Upon this plea, then, the verdict of the jury was perfectly correct, that the defendant did not keep harmless and indemnify the plaintiffs and the town. The result of his examination of the pleadings, then, is, that there were three issues formed : 1st. That the plaintiffs were not forced and obliged to pay money; that this was an issue of matter of law, and ought not to have been passed on by the jury, and was not passed on by them: 2d. That the defendant paid the plaintiffs all the money expended by them; that there was no evidence to support this plea bevond the deductions *657 made; and that although the jury have not passed upen it, yet that it is amendable, and this court will treat it as if amended: 3d. That the defendant did well and sufficiently indemnify and keep harmless the plaintiffs; that the burthen of proof to support this plea was on the defendant ; that he offered none, and that the jury correctly found against him.
The only question, then, left upon this record, is as to the amount of the recovery. The ground admitted by the pleadings is, that the child became chargeable. But if there was any doubt at all on that point, which I cannot admit, the order of filiation was good evidence of the fact. It contains an adjudication that the child had become chargeable to the town of Clermont, and I see not any objection to its competency. It was made by a tribunal of competent jurisdiction, upon a full hearing of the reputed father, and was entirely conclusive upon him, until reversed. Judge Sutherland inclines to think it was not admissible, because it was not necessary to warrant the expenditure. That, I apprehend, is not the question. Whether necessary or not for that purpose, it was a lawful proceeding for another purpose, and being the adjudication of a court, it may be used as evidence, collaterally, for any purpose. Thus, it is laid down in 1 Phillips’ Ev. 231, “ that a judgment by a court of quarter sessions, confirming '-an order of removal, is conclusive upon the appellant parish, as to all the world, and may be given in evidence against them by a third parish on any subsequent appeal,” to which he cites several cases. In the present case, there is an adjudication in rem of the fact of the child being chargeable, and of John Donnelly being the reputed father. He never can gainsay it, nor can the other defendants, his sureties, who are privies.
Order of filiation admissible to fix amount of damages.
If, then, it should be conceded, that notwithstanding the state of the pleadings, the plaintiffs were bound, in the first instance, to show that the child had become chargeable to. the town, they have done so by the highest evidence. Against this event, the child’s becoming chargeable, the bond was given to indemnify the plaintiffs, and the town, and it is worthy of observation, that the plaintiffs prosecute *658 as 'trustees-of the town, 'and for its benefit, *and not for their individual interest. Can there be a moment’s ‘donb't, that the town was damnified by the child’s becoming chargeable? The very duty of raising means to support it, wa's an injury. But I am disposed to go further, and express an entire concurrence with judge Woodworth, that it never could be intended that public officers should first pay out money to relieve themselves from a charge, against which charge they are indemnified, before they could maintain an-action on -the indemnity. The bond was given for -that very purpose; the obligors took upon themselves the Whole risk and burthen of the charge, if there should be one. Hot is there ¡any danger of injustice in such a principle ; for if the obligors have performed their undertaking, they have but to plead it, as in the present -case ; and If-they prove that they have saved harmless the town, there can be no recovery against them. If they have not performed their engagement, 'they ought to be made -liable to 'damages to such an amount as wil-1 save harmless the town And its overseers. The true ‘question, -and it appears to me the only question in "this case, was, then, what amount the plaintiffs should recover for the admitted breach ? The language of the bond furnishes the answer.; such an amount as would indemnify them. -Had *money be’en -actually paid, that would -have been good evidence of the -amount which would indemnify;" but not "conclusive evidence"; for might have been an unreasonable sum. The inquiry would be, what would be a reasonable "sum to indemnify? ■Parol proof might be offered on either side, and the jury must determine. In this case, the order was offered as evidence’Of what would be reasonable, and judge Sutherland seems to admit'that it would be good-evidence for that purpose, if money had been actually paid. But, surely, the fact -of money ¡having been actually paid-, or -not, could ¡not -¡alter the character-of the evidence as to what w-as reasonable to pay. It would be reasonable and proper to -pay -the given sum, or it would be unreasonable, whether that sum were paid-or ¡not. The amount lhalt ought to he paid cannot depend upon the .fact .of-how-much was paid, or wheth *659 er any was paid. This evidence, I think, was correctly admitted ; and in the absence of any other proof, it was sufficient to warrant the verdict" of the jury. They found ac-' cording to the rate specified in the order, after making deductions for the sums paid by the defendant.
One suggestion made in the argument, perhaps, ought to be noticed. It is, that it did not appear, but that the mother supported the child. The answer is two fold: 1st. If the fact were so, it was the business of the defendant to prove it, as he had undertaken to do by his plea: 2d. The evidence in the case of money actually paid by the defendant to the overseers, authorizes the inference that the overseers had supported the child. Indeed, this fact of payment is, in itself, as strong evidence as could be desired of an admission that the child was chargeable.
to ing the child,
In every view that I can take of this case, I feel thoroughly satisfied that the judgment of the common pleas was correct, and that the reversal of it by the supreme court was erroneous ; and although the rules of law cannot bend to suit any particular description of citizens, yet it is gratifying to find that they will not unnecessarily add to the burthens and difficulties of public officers who are endeavoring to discharge their duty; and, least of all, *that burthens which belong properly to the violators of the law, shall not be removed from their shoulders, in order to be placed on the* heads of public functionaries.
Jordan, Senator.
This was an action of debt upon" a bona, conditioned to indemnify the overseers, &c., of the town of Clermont, against the- expenses- of the birth, maintenance and education of a bastard child, with which-Hannah Lasher whs then pregnant. The plaintiffs,- in their declaration, set forth- the condition- of the’ bond, and assigned as breaches, that neither the’ defendant, or- any of his" coobligors, had indemnified the overseers,- See., but-had neglected and refused so to do by reason whereof the plaintiffs were forced and obliged to expend, and did necessarily expend a large sum of money, to wit, one-hundred dollars, about the birth, &c., of the child.-
case,
*660 The defendant called on the plaintiffs for a bill of particulars of the covenants broken, and of the money paid by the plaintiffs for the support, &c., of the child; to which the defendant answered, that the covenants broken were those to indemnify and keep harmless the plaintiffs and their successors, as overseers of the poor of Clermont, from all charges and expenses for the birth, &c.j of the. child ; but that the plaintiffs had laid out 16 dollars about the birth of the child, on or about the 1st of May, 1818, and 75 dollars in and about the maintenance, &c.; 65 dollars thereof about the 1st of May, 1820, and 10 dollars thereof on or about the 1st of May, 1821.
The defendant then pleaded, 1st. That the plaintiffs, &c., were not forced or obliged to expend the said sum of 100 dollars, or any part thereof, nor were they damnified, and concluded to the country; 2d. That the defendant had paid to the plaintiffs all money expended by them about the birth, &c., of the child, and concluded with a verification ;; 3d. That the defendant did indemnify the plaintiffs, &c., and concluded to the country.
The plaintiffs replied, taking issue upon the 2d plea.
"Upon the trial, the plaintiffs produced in evidence the bond declared on, and also an order of two justices of the *peace of the 25th April, 1818, charging John Donnelly, the putative father, and one of the co-obligors, with the payment of 16 dollars, lying-in expenses, and 56 cents weekly for support. Upon this order there were indorsed the receipt of several sums of money, up to the 4th of June, 1821, amounting to $43 47. The plaintiffs also proved that the child had lived with the mother from its birth, in the town of Clermont, and attempted to prove that the overseers had provided for it, but failed in establishing that fact, the witnesses being able to speak only as to general report. The plaintiffs then proved, that the amount at that time due upon the order of filiation, according to the terms of it, deducting the several indorsements, was $50 61, up to the time of the commencement of the suit. The court of common pleas of the county of Columbia, where the cause was tried, charged the jury, that *661 the evidence was sufficient to enable the plaintiffs to recover, and the counsel for the defendant excepted to that opinion. The judgment was reversed by the supreme court; and comes up to this court to be reviewed upon a writ of error.
Before I proceed to examine the cause upon its merits, I shall dispose of one or two preliminary questions raised upon the argument. The plaintiff’s first point is, that the pleading admits the payment of the money; and only denies, that the plaintiffs were forced and obliged to expend the same. It is objected on the part of the defendant, that this point was not raised on the argument before the supreme court ] and cannot, therefore, be raised in this court. Without stopping, at present, to inquire how far it might affect the ultimate decision, it appears to me the position is untenable, and that such is not, and ought not to be the law. It is undoubtedly a salutary rule, as adopted by this court, that where a party litigating a suit in a court of original jurisdiction, purposely or negligently omits to present any point to the consideration of the court, or where, if presented there, it might be obviated by proof or amendment, he shall not be allowed to draw that point in question *in the court of appellate jurisdiction. (13 John. 576. 18 John. 558. 2 Cowen, 49.)
„ „ the party the^oint^below, to entitle g^®lftoiEon
But where a cause is seriously contested in the court below, and the counsel put forth their powers in good faith upon the matters in issue generally, it appears to me to be taxing the human intellect too severely, to require it upon the first argument, to grasp the whole subject, and seize upon every point of argument embraced by the case, however abstruse or complicated, at the peril of a sacrifice of acknowledged rights, when the cause comes to be reviewed in the court of dernier resort. (18 John. 558.) There is no evidence to my mind, that this point was wilfully or negligently omitted, or that the difficulty it presents might have been obviated by proof or amendment in the court below, and I am, therefore, of opinion that it should be entertained here.
It was also urged by the defendant’s counsel, upon the *662 argument, that the finding of jury was only upon one issue,; leaving the issues upon the first- and- second pleas undisposed ofj and the same objection was made that this point was D0t raised upon the argument in the supreme court. Prom the view which I feel disposed to take of the ease, this carmot he material. But if it were so, the record might be amended by this court, I consider the verdict substanright, though formally incomplete. The jury find that the defendant did not indemnify the plaintiffs. This, implies that the plaintiffs had paid money, or, in other words,, had been, damnified, and had not been repaid by the defendants. It. virtually and substantially negatives the first and second pleas. Verdicts are not to be taken strictly like pleadings; and. I see no objection to adopting the opinion, of Lord Mansfield, in. the case of Hawks v. Crofton (2 Burr. 698,)- “ that when the intention of the- jury is manifest, and beyond doubt, the court will set right matters of form;” and the rule laid down in Hobart, 54„ “ that though the verdict may not conclude formally or punctually in the words of the issue, yet if the point in issue can be concluded out of the finding, the court will work the verdict into form,, and make it serve.” *If, then, the verdict be bad- only as to form, if it contain substance sufficient to conclude the parties upon the several issues, and only wants appropriate words, this court may set it right by amending; the. transcript, and ordering the record below to be corrected accordingly;. or they may overlook the defect and proceed' to judgment. (4 John. 499; 15 John. 318.) And moreover, this being an objection which might have been obviated, by amendment in. the. court below, and not having been-raised there, it ought not to be entertained here..
A verdict covof several °i6 sues, may be goes substanwhole merits,
Or the defect looked9 °ver"
I now come to consider the first point connected with the merits, and to determine whether the fact of the pay-meat and expenditure.of money by the overseers for the support of .the child, is admitted by the defendant’s first plea. I find by looking into the precedents for pleadings upon bonds like the present, (2 Chit. Pl. 154, 480, 621, 665; 7 Wentw. 615; 5 id. 531,) where the declaration is *663 apon, the bond -simply, the defendant craves oyer of the condition, and pleads non damnificatus; the plaintiff replies setting forth the breaches, and the defendant rejoins, taking issue. The rejoinder, in that case, which answers to the plea in this, appears to have been taken as the preeedent for the defendant’s first plea, and I cannot discover that such a plea has ever been deemed to admit the fact of payment.
*662 Whether ex-adnfitted* by ist plea.
*663 In a plea, certainty to a common intent is suEcient. (1 Chit. Pl. 237 Cowp. 682. 1 Saund. 47, n. 1.) The court are to read and understand the record like the of mankind, that is, by giving the words a natural, not an artificial meaning. The words, forced and obliged to pay, adopted in. the assignment of breaches, in their natural sense, are equivalent to an allegation of actual payment. They have clearly been so understood by the eleméntary writers. They import a very different meaning from the words “ became liable to pay,” and it is diEeult to understand how one may be said to have been forced to pay money, who had not actually paid it. To say I had been forced to do a thing which confessedly remained undone would, in common parlance, be considered absurd. ' If I *am correct as to the import of these words; they needed not the aid of the expletives, “ did necessarily expend.” They amounted alone to an averment of payment. The plea negatives that averment, not, to be sure, m its precise language, but in substance. The court, in giving a construction, cannot add words; but it is the exercise of a legitimate power, founded in great good sense to construe the language of a pitea iu bar according to its natural purport, and to give it effect according to the ordinary acceptation of its terms, and the manifest intention of the pleader.
In. a PIea> common intent sufficient-
This bond is strictly a borid of indemnity, and must be governed by the ordinary rules applicable to instruments of that nature; ánd whether the bond be given before after the birth of the child, I think, cannot be material. The act makes no distinction in terms; and I think we ought not to do it by constructidti.
Bona is stri.cbdemtity mere-
*664 The statute of this state, (1 R. L. 306,) and that of Eng* land, (6 Geo. 2,) the provisions of which are, in this respect, alike, have authorized none others than securities to indemnify; and all instruments taken under these statutes) whether bonds, penal bills or promissory notes, have been circumscribed in their effects, by the court, of both countries, to the mere purposes of indemnity. (5 Esp. Rep. 142. 6 East, 110. 1 B. & A. 491. 1 Brod. & Bing. 1. Overseers of New Lisbon v. Gilbert and Noble, Sup. Court, Jan, term, 1821, MS.) The last case was one of a bond without condition ; and held good as an instrument of indemnity. .And even where a gross sum of money was paid to the overseers by the putative father, to be exonerated from the maintenance of his bastard child, and the child died before the whole money was expended in its support, Lord Ellenborough held, that assumpsit lay to recover back the unexpended surplus. (1 Cambp. 398.)
It is a circumstance common to all bonds, whether of indemnity or otherwise, whether given to public officers or private individuals, that an action lies where the condition is broken; and not till then.
Ho action lies till Condition broken.
""There are several kinds of bonds that are in effect bonds of indemnity; and what amends to a breach of the eondition, depends upon the nature and term's of the condition. A bond absolute upon the face of it, conditioned for the payment of a gross sum of money on a specified day, may be given in reality for the purpose of indemnity. Such was the case in Toussaint v. Martinant, (2 T. R. 100.) That was an action on the case for money paid ; and bankruptcy pleaded. The jury found specially, that the defendant borrowed £1500; that the plaintiff executed a bond with him for the amount as surety, payable in March, 1786; that the defendant then gave the plaintiff his counter bond for the same amount, payable in February, 1784. This counter bond became due before the commission of bankruptcy of the defendant issued, though the plaintiff did not pay the money until afterwards, and it was held by the court of king’s bench, that the action on the case would not lie. The. counter bond, though in effect a bond of indemity, was *665 absolute upon the face of it. The condition was broken by non-payment of the money at the day. It was therefore, a debt due and payable to the plaintiff before the commission issued; was proveable by him, as such under the commission; and, therefore, discharged by the certificate. The cases of Martin v. Court, (2 T. R. 640,) Hodgson v. Bell, 7 T. R. 93,) Douglass v. Clark, (14 John. 177,) and (Rosevelt v. Mark, (6 John. Ch. Rep. 266,) contain the same principle.
How, it is clear that this was a mere bond of indemnity ; and had it been paid at the day, and the obligee or surety had not afterwards been called on to pay the original bond, the court of chancery would have interposed its power to replace the money. So in the case of sheriff’s jail bonds, the object and ultimate effect is, the indemnity of the sheriff ; but the condition of the bond, in terms, is, that the party in execution remains a true and faithful prisoner, and the moment he transgresses the limits, the condition is broken, and the action lies; and it does not depend, I apprehend, upon any distinction between the rights of a public officer and a private individual, holding *a bond of indemnity. Should the sheriff recover, and receive the amount of his bond, and afterwards be exonerated from liability, without payment of the debt a court of equity would compel him to refund.
It is true, when a prisoner escapes, and is retaken on fresh pursuit, or returns voluntarily before suit brought, it is held no action will lie on the bond. (10 John. 568.) This, however, proceeds upon the ground, that on the re-caption or voluntary return, the escape is purged. The sheriff cannot afterwards, in any event be damnified. It is as no escape, and does not militate against the principle I maintain.
How, suppose the overseers in the present case, instead of inserting the condition to idemnify, had inserted a condition for the payment of a gross sum of money, on a specified day; the instrument would not be void. It would be sustained as an instrument of indemnity, upon the principle of the cases above cited. Tho condition would be broken in law, when the day of payment had elapsed and *666 the .obligees then, if ever, could maintain the action. If they should collect more money than was ultimately expended, they might in equity be compelled to refund ; and probably the court of law in which the recovery might b.e had, would interpose its equitable power to stay the collection of the money on the execution, beyond the ac? tual .expenditure. The bond upon whiph the present action was brought, was not only a bond, the ultimate purpose of which was the indemnity of the plaintiffs and their successors, but it was so conditioned upon the face of it; and I much doubt whether a case can be found in the an.nals of enlightened jurisprudence, where, upon a deliberate and solemn adjudication, it has been laid down as a general rule of law, that a bond or a covenant to indemnify, becomes forfeited or broken, by anything short of the actual injury against which-it was intended to guard. An impending injury that has not yet fallen, however imminent the danger of the party, has never, so far as my knowledge or research extends, been held a breach upon which an aer tion could be maintained. (3 Wils. 13, 262, *340.) Thus, a covenant to indemnify against an incumbrance by mort: gage upon the covenantee's land, is not broken by a fore: closure and sale. Nothing short of an eviction amounts to a breach in law. (8 John. 198. 3 id, 464.)
A covenant of warranty is not broken, though the title prove utterly defective, until actual eviction. The cove: nant !of seisin is not broken by outstanding judgments and mortgages, though to a greater amount than the value of •the property. (7 John. 376.) In all those cases, the party becomes liable, not only to a probable loss of his property, but to one morally certain.
It is contended, that the legal effect of this bond is to indemnify against liability, or, in other words, that when the overseers became liable to support the child, the condition was broken. Such are not the terms of the bond. It was to indemnify against taxes, charges and expenses, by reason of the birth, &c. It was said, also, that the law imposes a general obligation upon the overseers to provide for the support of illegitimate children. If both these posi *667 tions be true, then it follows that the bond is forfeited at the moment of its execution, and that by the mere operation of law. Such a result ought not to be imputed to our civil code, if it can be avoided by any other rational interpretation. If the former position be true, and not the latter, then the plaintiffs must fail, for there was no liability, in fact, shown on the trial, none but what results from legal implication. The mother had kept the child; no promise from the plaintiffs to pay was proved, and the law does not raise a promise. (13 John. 380. 18 id. 122. 12 id. 195.)-If the latter proposition be true, and not'the former, which I am disposed to believe, then the plain consequence of a bond of indemnity will result, namely, a right of action when the overseers have actually expended money, and not till then. If these views are correct, then it only remains to inquire, whether the order of filiation was evidence of such expenditure.
The statute (sess. 36, c. 12, sec. 1; 1 R. L. 306,) authorizes the justices to make an order upon the putative ^father for a weekly allowance; and to commit him, unless he give surety to perform the order, or appeal to the next sessions, and perform such order as shall be there made. Sec. 2 authorizes the justices to arrest and commit the putative father, unless he shall give security to indemnify the town, or to appear at the next sessions and abide such order as shall be made under the act. There is no connection between the two remedies. The order of filiation must adjudge the payment of a certain sum; and under that section the surety is to pay that specific amount, or abide the future order in the premises. Under the second section, the surety is to indemnify the town, or abide the future order. To construe the bond of indemnity into an obligation to pay the amount of the order, would be changing its nature altogether, and making it a bond for the payment of a sum certain. It has been said, that the order was correctly admitted in evidence, because it was an adjudication upon the subject matter, in the nature of a judgment for the 16 dollars, and 4s. 6d. weekly; and fixed the extent of the defendant’s liability. It is undoubtedly in *668 the nature of a judgment, (6 Cowen, 277,) and therefore, if evidence at all, it must be conclusive evidence; and then what becomes of the idea of indemnity ? Though but Is. be actually paid, the 4s. 6d. must be recovered; and, on the other hand, if 10s. were expended, 4s. 6d. is the extent of the liability. Such must inevitably be the result, if the order or adjudication is to be deemed a liquidation of the defendant’s liability under the bond of indemnity. Tf it is not a liquidation of his liability; but leaves that as it was before, to depend on accident and circumstances, then the order so far as it may be supposed to have any connection with the indemnity bond, would be a most useless and idle ceremony. In every view of this point which I have been able to take, the remedies under the first and second sections are entirely distinct. They are concurrent, it is true, but in my judgment, cannot be blended. I am, therefore, of opinion, that the bond is simply a bond of indemnity ; that the plaintiffs are damnified, except by the actual payment of money; that the order of filiation was not '"legal and competent evidence of that fact; and that the judgment of the supreme court ought to be affirmed.
*667 Whether the tion'was ™vT dence-
*668 The court, however, excepting Gardiner, Jordan, Ogden and Stebbins, Senator, concurring in the result of the opinions delivered by the Chancellor and Spencer, Senator, there was judgment of reversal, 28 to 4.
The rule thereupon entered was, that the judgment of the supreme court be reversed; and that of the common pleas affirmed; and that the record be remitted, &c.

 Under the New York Revised Statutes, the reputed father and the mother of a bastard child, are liable for its support; and in case of their default, or inability, it must be supported by the town or county where it is born. The mother of a bastard child, if unable to support herself during her confinement and recovery, or subsequent thereto, is, as well, as her child, to be provided for, itr all respects, as a pauper. The old system of compulsory iv noval of paupers is wholly abolished; still, however, questions of settlement, Lctvyeen different towns in the same county, may arise, which are to be determined by the superintendents of the poor. The rules, as to the legal settlement, for the purpose of maintenance, of a mother and her bastard child, are as follows; (1 R. S. 822, secs. 3 and 4; sec. 63.)
1. If the mother have no legal settlement in the county where the child is born, they are to be supported at the expense of such county.
2. They must be supported at the expense of the county where the child is bom, if such county be one of those where the distinction between town and county poor is abolished. If¡ however, the mother has been removed, or clandestinely brought, or enticed to remove, from any other part of the state, to avoid the charge of their support, the overseers of the poor, or superintendents of the poor, have the same remedies therefor as in the case of paupers.
3. In counties where the respective towns, support their own poor, they are to be supported at the expense of the town where the child, is born, if the mother have a legal settlement therein.
4. If the mother have a settlement in some other town, than that in which the child is born, of the same- county, and which town is required to support its own poor, they are to be supported at the expense of such other town.
In respect to the latter rule, it is to be observed,.that although the mother and child are to be provided for at the expense of the town where- the mother is legally settled, yet they are to be supported in the town where the *627-1 child is born, unless they are taken- voluntarily to the town chargeable. The proceedings to compel the town chargeable, to indemnify the town where they are supported, are to be conducted by the overseers of the poor. Id. secs. 54, 58, and 63.
The preceding summary of statutory provisions, is deemed necessary as a guide to justices of' the- peach in their official duties under the statute. -
In counties where the poor are all a county charge, the superintendents of the poor make provisions for the support of a bastard child and its mother. In counties which have a county poor-house, and' the poor are chargeable to the respective towns, the overseers of the poor may, with" the approbation of two of the superintendents, and where the situation of the mother will' permit, remove the mother and child to the poor-house.’ In the last mentioned counties, where the situation of the mother will not admit of the removal to the poor-house, (and in those cases only, where no moneys have been received from thé putative fattief/or from the mother, to repay the expenses of their support,) the overseers of the pdor may apply to a? justice of the peafce for an order for the temporary relief of the bastard, and the sustenance of the mother, during her confinement and recovery therefrom, as in case of other paupera 1 R. S. 833, 834, secs. 65, 66.
In the counties where thbré is nti poor-hbuse, or other place provided for the reception of the-poor, and1 application be made for the relief of a bastard and its mother, and no moneys shall have been received from the putative father, or from the mother, for their support, the overseers of the poor, with the assistance of some justice of the peace of the town, must inquire into the circumstances of the- case, and make an order for such weekly allowance, or otherwise; ad the justice and onb of the overseers shall deem to he required. Ib; sec. 65.
The most important branch-of this subject relates to the mode of compelling the putative father, and the mother, when she has property in her own fight, to indbmnify the public.
If a woman be delivered of a bastard child, which is chargeable, or likely to become chargeable, to any county, city, of town; or shall be pregnant with a child likely to be born a bastard, and to become so chargeable, a superintendent or overseer of the poor, where the woman shall be,, is required to apply to a' jústice of the peace of the county, to make inquiry into the facts and circumstances of the casé: 1 R. S. 823, see. 5:
The first proceeding before the justice is the examinination of the woman, and the hearing of other testimony which may be offered-to ascertain the putative father. For the purpose of such examination, the woman usually appears voluntarily before the justice. The examination must be on oath; and although the statute does not require it; there seems to be great propriety in reducing it to writing. Ib. see. 6; Waterman’s Treatise, pp. 313, 314, 315.